241 A.2d 821.

Constance L. Coupe *et al* vs. Zoning Board of Review of the City of Pawtucket.

MAY 9, 1968.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Joslin, J. This is a petition for certiorari brought by several remonstrants asking for a review of the respondent board's decision granting the applicants permission to construct a gasoline service station on a 15,000 square foot triangular shaped parcel of land located on the corner of Prospect Street and Dunnell Lane in the City of Pawtucket. The parcel consists of lots numbered 20, 21, and 56 on assessor's plat 34. Two of those lots, 21 and 56, have been and are vacant; situated on the third, lot 20, is a gasoline service station. It is a nonconforming use. If the board's action granting a variance is approved, the applicants propose to raze the existing station and to use the three lots for a new station.

The record certified consists of the application, several exhibits, and the board's decision. Although the oral testimony presented at the hearing before the board was recorded stenographically, there is no transcript. The parties agree that the board's decision contains a fair report and a reasonably accurate summary of the oral testimony and of the facts brought to the board's attention. Such a record is sufficient to permit review. *Robinson* v. *Town Council*, 60 R. I. 422, 437, 199 A. 308, 314; *Jacques* v. *Zoning Board of Review*, 64 R. I. 284, 12 A.2d 222. A better practice, however, would have been to include the stenographic transcription of the testimony, if available, with the record which was certified.

On the view we take of the case, the only question is whether the record contains any competent evidence showing that a literal application of the terms of the ordinance would deprive the applicants of all beneficial use of their property. Probative evidence to that effect is, of course, a prerequisite to the grant of a variance. *Laudati* v. *Zoning Board of Review*, 91 R. I. 116, 161 A.2d 198.

The critical issue is whether the required showing has been made as to each of the three lots. On that issue the only relevant evidence came from a real estate expert who appeared on behalf of the applicants. He considered each of the three lots separately and gave his opinion on what the effect of a literal enforcement of the ordinance provisions would have on each. He did not, however, testify on what that effect would be on the three lots if they were merged into one parcel as proposed by the applicants. Such an opinion certainly would have been relevant. Whether it was crucial and its omission therefore fatal is a question we do not reach, inasmuch as even on the record as submitted there was no basis upon which to rest a grant of a variance.

Lot #20, the expert said, had "* * * practically no value

for residential purposes or for any other uses now permitted within a residential zone"; and, "Lot #21 abutting the station has only a 60 foot frontage on Prospect Street and that this is a relatively small lot by today's standards and that increasing traffic on Prospect Street with no parking in front of Lot #21 and the adjacent gasoline station with old structures has made its value practically nil for residential purposes." "No prudent person," he testified, "would buy it for residential use."

His testimony concerning lot 56 is perhaps more detailed. He stated that "* * * Lot #56, which is in the rear of the lot, and fronts on Dunnell Lane, is vacant; and that it has not developed when the rest of the houses in the area were built. He stated that this is most likely due to the fact that it is irregular in shape with only 31½ feet on Rhode Island Avenue. He stated that its use would require costly grading and a residence would have to front on Dunnell Lane, looking at old garages and suffering with truck traffic. He stated further that these physical facts, coupled with the adjacent legal non-conforming use with old buildings, has made it useless for residential purposes."

We measure this expert testimony against that which in *Marks* v. *Zoning Board of Review*, 102 R. I. 545, 232 A.2d 382, we found insufficient to justify a variance for the conversion of a church building located in an R-3 district into a funeral home. In that case, a real estate expert testified that the cost of converting the existing structure into a permitted multiple dwelling would be "economically prohibitive." While he did not estimate the cost of such a project, a contractor, also testifying for the applicant, expressed the opinion that to attempt to use the land for that purpose "would not be economically feasible." He, however, did not buttress his opinion with any "factual data on construction costs." We withheld our approval because in our judgment the testimony on undue hardship lacked probative force. The real estate expert's testimony, we

said, was deficient because it did not appear that he had any knowledge of multiple dwelling construction costs, and the contractor's testimony likewise deficient because he did not give the factual data upon which he based his conclusion that to construct a dwelling would not be economically feasible. The standard we adopted was that an expert opinion on the ultimate question of whether or not an insistence upon a literal enforcement of the zoning restrictions would deprive a property owner of all beneficial use of his property will be without competence unless it "* * * is the product of expertise applied to a given set of facts." If the evidence in *Marks* did not measure-up to that standard, then, a fortiori, the evidence in this case does not.

The petition for certiorari is granted, and the decision of the respondent board is quashed. Motion for reargument denied.

*Crowe, Hetherington and Chester, Herbert M. Adams,* for petitioners.

*Victor J. Beretta,* for Zoning Board of Review, *Letts & Quinn, Daniel J. Murray, Jerome B. Spunt,* for applicants Sibarco Stations, Inc. and Carol Bertozzi, for respondent.