**Frank GAGLIONE**

v.

**George N. DiMURO et al.**

**No. 83–451–M.P.**

Supreme Court of Rhode Island.

July 19, 1984.

**574**

Anthony M. Gallone, Providence, for petitioner.

William T. Henry, Cranston, for respondents.

## OPINION

MURRAY, Justice.

This is a petition for certiorari which seeks the review of a trial justice's decision affirming the award of a zoning variance to certain landowners by the Zoning Board of Review of the City of Cranston (hereinafter zoning board). It presents one issue, whether the evidence presented to the respondent-zoning board in support of an application to develop a certain parcel of real estate was sufficient to justify the zoning board's decision to grant these landowners the disputed variance. The facts pertinent to this appeal are set out below.

On January 7, 1983, Richard and Carmine Boscia (hereinafter the Boscias), filed an application for a variance with the zoning board. In their application, they sought relief through section 30–49 of the Cranston City Code [1] from the requirements of the zoning ordinances of the city of Cranston as it applied to property that they owned on Mayfield Avenue. [2] The specific development proposal submitted by the Boscias included a request to construct seventy townhouse condominium units on this land.

On February 9, 1983, a public hearing was held upon the Boscias' application for

---

**1.** Section 30–49(p) of the Cranston City Code provides in pertinent part that

"[t]he zoning board of review shall have the power to authorize upon appeal in special cases such variances in the application of the terms of this chapter as will not be contrary to the public interest where owing to special conditions, a literal enforcement of the provisions of this chapter will result in unnecessary hardship and so that the spirit of this chapter shall be observed and substantial justice done."

**2.** This property, designated as lots no. 30, 31 and 879 on Assessor's Plat 5 in the city of Cranston, was zoned A–8 by the city. This classification permitted the construction of single-family homes on the property but not the building of multifamily dwellings.

a variance. The Boscias presented the testimony of various expert witnesses in support of their condominium proposal. James Salem, a traffic engineer, testified that he had performed a traffic study of Mayfield Avenue and the surrounding area. He stated that the results of his study revealed that the development proposed by the Boscias would not significantly increase traffic or congestion in the area nor would it create additional safety problems.

Richard J. Cardarelli, a member of the American Institute of Architects, testified that he had developed a site plan for the Boscias' Mayfield Avenue property. He stated that the proposed plan would conform to all the setback, height, and parking requirements for an A–8 zone. He also testified that there were adequate water, gas, and sewer facilities on Mayfield Avenue to supply the proposed development with its basic utilities.

Donald B. Colletti, president and treasurer of Bruce Allen Realtors, performed a real estate survey of the Mayfield Avenue property for the Boscias. The specific contents of his report were submitted to the zoning board in support of the Boscias' application. Relevant excerpts from his report included the following.

"Due to the configuration of the subject property, individual single families would not be an appropriate use for the subject. Building a single family type of property on the subject site would be economically unfeasible because of the proximity to a business block abutting the subject property and therefore causing built-in locational obsolescence for a single family type of residence.

"It is my opinion, because of the inappropriateness of single family homes for the subject site, because of its configuration and other surrounding uses, that, if relief were granted, it would not be contrary to the public interest, and that due to the special conditions of the site, * * *

a literal enforcement of the provisions of the Zoning Ordinance, would result in unnecessary hardship.

"In my opinion, if relief were granted, it would cause no injury to the public health, safety, or welfare; it would not alter the essential character of the neighborhood in which it is located, and it would not substantially injure the appropriate use of neighboring properties. Rather, relief would serve the public convenience and welfare by providing town house residential structures in a relatively residential area.

"In my opinion, the proposed use is an appropriate use and [I] would urge that relief be granted."

On March 9, 1983, the zoning board granted the Boscias' application for a variance to construct multifamily units on their Mayfield Avenue property. In its decision, the zoning board modified the terms of the original development project. It reduced the number of condominium units that could be built on the site to fifty-six, required the planting of shrubs and the installation of a five-foot fence along the rear property line, and directed that all buildings be set back at least thirty-five feet from the rear property line.

On March 25, 1983, petitioner filed his appeal in the Superior Court from the decision of the zoning board. In his complaint, petitioner alleged that he owned property within a 400-foot radius of the Boscias' Mayfield Avenue property.[3] He further alleged that the zoning board's decision adversely effected the use and enjoyment of his property and was clearly erroneous. On August 16, 1983, a trial justice of the Superior Court affirmed the decision of the zoning board upon the grounds that it was not clearly erroneous and was based upon reliable, probative, and substantial evidence.

---

3. Although petitioner's property did not abut that of Richard and Carmine Boscia, it was contained within the 400-foot radius map of surrounding land submitted by respondents to the zoning board.

It is well settled that to obtain a variance from a permitted use of property, a landowner must prove that "rigid insistence upon the property being devoted to a use permitted by the zoning regulations will deprive [him] of all beneficial use of his property and will therefore be confiscatory." *Goodman v. Zoning Board of Review of Cranston,* 105 R.I. 680, 683, 254 A.2d 743, 745 (1969) (citing *Bilodeau v. Zoning Board of Review,* 103 R.I. 149, 235 A.2d 665 (1967)). This rule demonstrates that "unnecessary hardship," as defined in G.L. 1956 (1980 Reenactment) § 45-24-19(c),[4] "exists only when *all* beneficial use has been lost and the grant of a variance becomes necessary to avoid an indirect confiscation." *Rhode Island Hospital Trust National Bank v. East Providence Zoning Board of Review,* 444 A.2d 862, 864 (1982) (citing *Denton v. Zoning Board of Review of Warwick,* 86 R.I. 219, 221-22, 133 A.2d 718, 719 (1957)).

Additionally, to obtain a variance, an applicant must demonstrate by *probative evidence* that a literal application of the terms of the ordinance would deprive him of all beneficial use of his property. *Coupe v. Zoning Board of Review of Pawtucket,* 104 R.I. 58, 59, 241 A.2d 821, 822 (1968). "[A] mere showing of a more profitable use that would result in a financial hardship [to the owner] if denied does not satisfy the requirements of our law." *Rhode Island Hospital Trust National Bank v. East Providence Zoning Board of Review,* 444 A.2d at 864.

We have also held that statements of economic unfeasibility that are mere conclusions and are unsupported by financial statements or cost data do not constitute probative evidence. *See Goodman v. Zoning Board of Review of Cranston,* 105 R.I. at 684-85, 254 A.2d at 746. To be entitled to a zoning variance, a landowner must show "that the present return on the property [is] so low that to require its continued devotion either to its present use or to others permitted under the ordinance would be confiscatory. Without such a showing, [a] naked assertion of economic unfeasibility is meaningless." *Id.* at 685, 254 A.2d at 746.

In the present case, the evidence offered by the Boscias was insufficient to support the zoning board's award. No financial data was contained in the real estate survey submitted to the zoning board by Mr. Colletti. His report simply contained his own general opinion that the construction of single-family homes upon the Boscias' Mayfield Avenue property would be economically unfeasible. It did not contain any specific financial information demonstrating that the present return on the parcel reflects a confiscatory taking by the city through enforcement of its zoning classification. As in *Goodman,* where the economic evidence presented by a landowner in support of an application for a variance was tantamount to unsupported financial conclusions about the present use of a certain parcel, this report lacks probative force. Consequently, Mr. Colletti's report fails to demonstrate adequately that denial of the Boscias' application for a variance would have resulted in economic hardship under § 45-24-19.

Similarly, the testimony of Mr. Colletti at the zoning board hearing does not provide an adequate basis upon which to affirm the zoning board's award of the variance. Mr. Colletti testified concerning the projected property-tax yield of the proposed development and the likely per-unit costs of the condominiums that the Boscias planned to build. Specifically, Mr. Colletti stated that (1) the development should provide between $77,000 and $91,000's worth of taxes yearly and (2) the per-unit cost of the condomini-

4. Under G.L. 1956 (1980 Reenactment) § 45-24-19(c), a zoning board may "authorize upon appeal in specific cases such variance in the application of the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done."

ums would be between $48,000 and $55,-000.

Initially, we note that his statement about the projected property-tax yield to the city from the proposed development has no bearing upon the Boscias' application for variance. It is the present return to the Boscias from the permitted use, not the projected return to the municipality from a currently restricted use, that determines the propriety of the zoning board's actions. Second, a projection of the likely per-unit sales price of the condominium units that is unrelated to their cost of construction lacks any probative force on the issue of unnecessary hardship. Evidence of probable sales revenue to be generated by a proposed development without a comparison with its total investment cost "lacks probative force on the question of whether putting the land to the permitted residential use would result in unnecessary hardship." *See Marks v. Zoning Board of Review of Providence*, 102 R.I. 545, 551, 232 A.2d 382, 385 (1967).

Our review of the record demonstrates, therefore, that the evidence offered by the Boscias in support of their application for a variance amounted to nothing more than general assertions that a seventy-unit condominium complex would be a more beneficial and profitable use of their land than a single-family-home development. As we have previously stated, however, when a zoning board considers an application for a variance, it may not equate economic unfeasibility in the real estate market with undue hardship. *Goodman v. Zoning Board of Review of Cranston*, 105 R.I. at 686, 254 A.2d at 747. Since the zoning board has failed to convince us by probative evidence that enforcement of the zoning classification would be economically prohibitive, its award of a variance to the Boscias was error.

The petition for certiorari is granted, the decision of the zoning board is quashed, and the case is remanded to the Superior Court with our decision endorsed thereon.