[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a decision of the Zoning Board of Review of the City of Providence. The plaintiff here seeks reversal of the Zoning Boards November 6, 1991 decision granting the defendant, Marilyn Jackvony's petition for a variance. Jurisdiction in this Court is pursuant to Rhode Island General Laws 1956 (1988 Reenactment) § 45-24-20.
I. CASE TRAVEL/FACTS
Marilyn A. Jackvony (hereinafter referred to as the defendant), is the record owner of a certain parcel of land and house located at 735 Smith Street, Providence, Rhode Island. This parcel is designated as Lot No. 85 on Plat 120, and is zoned R-2 which, under the Providence Zoning Ordinance is defined as a two family dwelling. On October 8, 1991, the defendant filed an application with the Zoning Board of Review of the City of Providence (hereinafter referred to as "the board") for a variance from Section 42-A of the Providence Zoning Ordinance to convert the property from residential use to use as professional law offices. The board conducted an advertised public hearing on the application on October 15, 1991. At this meeting both the defendant and many remonstrants presented evidence in support of, and in opposition to the granting of said variance.
At the hearing, Mr. Louis V. Jackvony, who is the defendant's husband, testified on behalf of the defendant. Mr. Jackvony testified that his wife purchased the property in question in 1982 on foreclosure from Marquette Credit Union. (R. 0000002). The property had previously been owned by Dr. Vincent DeRobbio, who had used the first floor of the house as a doctor's office, and the second floor as a residential apartment.[1]
(R. 0000002). Mr. Jackvony stated that he had lived in the apartment from 1983 to 1988 and that he has been practicing law on the first floor for approximately eight (8) years. (R. 0000003). He stated that he would now like to use the whole building for professional law offices necessitating he and his wife to seek this variance. (R. 0000004).
He stated that since he has been practicing law at that location, there has never been a traffic problem on that part of Smith Street. Additionally, he stated that there are never more than one (1) to two (2) cars in front of the building at any time during working hours. (R. 0000003, 0000024).
Mr. Jackvony additionally testified that he has been trying to sell this property for approximately 2 years, but that the only offers he received during that time were from parties interested in converting it to a two family residential use to rent to students, and from parties interested in using the property for retail purposes. (R. 0000003, 0000023). He stated that he does not want to sell the property to someone who would like to use it for these purposes (rent to students or retail) because he is interested in preserving the neighborhood as it is today. (R. 0000025).
Mr. Jackvony further stated that in his opinion, the property is not conducive to the residential use for which it is zoned. (0000003). He stated that there are three reasons for this. First, the house contains approximately 3000 square feet and, hence is too large. (R. 0000003). Second, there is a large parking lot directly across the street owned by Roger Williams Hospital which he believes could some day be used for anything from a church to a nursing home, or even as another hospital. (R. 0000004). Third, he stated that Smith Street is no longer strictly a residential zone. (R. 0000004) Rather, he stated that there are presently many other professional uses of property along that street. (R. 0000004). Finally, Mr. Jackvony stated that there would be no change to the exterior of the building itself (R. 0000006, 0000007).
Mr. James Salem, who is a transportation expert, also testified on behalf of the defendant. Mr. Salem stated that he had studied the effect the proposed use would have on the intersection of 735 Smith Street, and that in his opinion, said use would not create any additional traffic congestion. (R. 0000006). He stated that the reasons for this are threefold. (R. 0000006). First, he stated that any additional traffic generated by the proposed use would be spread out over the course of time rather than in a concentrated period. (R. 0000006). Second, most of the business of the law offices would be conducted away from the site. (R. 0000006). Third, the office use proposed would not impact the a.m. peak hour. (R. 0000006). Finally, Mr. Salem stated that the parking plan for the proposed use conforms to good engineering standards. (R. 0000006).
Mr. James Sloan, a real estate expert, was the final witness to testify on behalf of the defendant. Mr. Sloan testified that he is familiar with the general area in which the property in question is located and that the real estate within an eight (8) block radius of said property presently contains a mix of commercial, two-family residential, and single family residential uses. (R. 0000008, 0000009). Mr. Sloan compared the proposed use in this case to another case that he had participated in in which the board granted the owners of a large house on Hope Street a variance to use the property for professional offices. (R. 0000010). Mr. Sloan stated that the board based its decision to grant that variance on its finding that the proposed use would not adversely affect the surrounding neighborhood because Hope Street already contained a mixture of residential and commercial uses. (R. 0000010). Hence, Mr. Sloan argued to the board that because Smith Street is similar to Hope Street in that it contains a mixture of uses, the board should adopt a similar ruling on the variance at bar. (R. 0000010).
Mr. Sloan additionally stated that he tried to market the property in question as a single family residence or a single family residence with the idea that part of the dwelling could be used as a professional office, but was not able to find a buyer. (R. 0000011). He stated that in his opinion, there are two reasons for this. (R. 0000011). First, the size of the structure makes it hard to sell as a single family use. (R. 0000011). Second, the property is across from a non-residential complex (Roger Williams Hospital) which makes said property less attractive as a residential use. (R. 0000011). Finally, Mr. Sloan testified that in his opinion, the proposed use would not in any way diminish the value of the neighboring pieces of property. (R. 0000012).
Several remonstrants also testified in opposition to the granting of the variance. Mr. Armand Batastini, who is a state representative from the Elmhurst district, stated that there is a serious parking problem in the entire area in which the property in question is located that would, in his opinion, only be aggravated by the proposed variance. (R. 0000014). Ms. Irene Colletta also expressed concerns about a potential parking problem (R. 0000018).
Additionally, several individuals including Ms. Freida Spirito, Mr. Robert Sturgels, Councilman Peter Mancini and the President of the Providence Preservation Society, Ms. Wendy Nicholas, urged the board to deny the application for the variance in the interest of preserving the historic nature of the neighborhood. (R. 0000015, 0000016, 0000020, 0000022).
Finally, Ms. Freida Spirito, Mr. Edward Smith, and a gentlemen identified in the record as Mr. DeConti testified that, in their opinion the defendant is not suffering any hardship because the property as zoned could be used for a one family residence, a one family residence with an office, and/or a two family residence. (R. 0000019, 0000021, 0000026).
After the hearing, the board granted the defendants' request for a variance by Resolution #7463 dated November 6, 1991. In that resolution, the Board made findings indicating the "R-2 zone classification of the subject premises now operates to cause the petitioner unnecessary hardship and to deprive her of all beneficial use of the subject premises." From that zoning board resolution, this appeal followed.
II. APPELLATE REVIEW OF MUNICIPAL ZONING BOARD DECISION
The Superior Court review of a zoning board decision is controlled by R.I.G.L. 1956 (1991 Reenactment) § 45-24-20(D), which provides in pertinent part as follows:
 45-24-20. Appeals to Superior Court
 (d) The court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: (1) in violation of constitutional, statutory or ordinance provisions; (2) in excess of the authority granted to the zoning board by statute or ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing a zoning board decision, the Superior court ". . . . is not empowered to substitute its judgment for that of the zoning board if it can conscientiously find that the boards decision was supported by substantial evidence in the whole record." Apostolou v. Genovesi, 120 R.I. 501, 508,388 A.2d 821, 825 (R.I. 1978). This requisite "substantial evidence" has been further defined as ". . . more than a scintilla but less than a preponderance." Id. 120 R.I. at 508; ". . . . some relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. 120 R.I. at 510.
The plaintiff contends that the zoning board's granting of the application for a variance be reversed for lack of substantial evidence. Specifically, the plaintiff claims that the record clearly indicates that the defendant could have sold the property to parties interested in converting the house to a two family use to rent to students. Additionally, the plaintiff contends that the record indicates that the defendant has not explored the option of converting the property to a two family use or that such conversion is not a rational economic option. Hence, the plaintiff contends that the defendant has not sufficiently proven that literal enforcement of the zoning ordinance will result in unnecessary hardship. This Court's viewing of the whole record reveals that the decision of the zoning board was not supported by substantial evidence, an examination of which follows.
III. THE VARIANCE
Rhode Island General Laws 1956 (1988 Reenactment) §45-24-19(c) clearly sets forth the standard for the granting of a variance. Variances are authorized when the applicant demonstrates that the ordinance as applied will result in unnecessary hardship and that such variance will not be a contrary to the public interest. Rozes v. Smith, 120 R.I. 515, 518, 388 A.2d 816 (1978). The plaintiff's threshold burden is to demonstrate the unnecessary hardship caused by the applied zoning regulation. The court has interpreted an "unnecessary hardship" as "a deprivation of all beneficial use of one's land." RhodeIsland Hospital Trust National Bank v. East Providence ZoningBoard of Review, 444 A.2d 802, 804 (R.I. 1982); DeStefano v.Zoning Board of Review of Warren, 122 R.I. 241, 246,405 A.2d 1167, 1170 (R.I. 1979). To prove that a literal application of the terms of a zoning ordinance would deprive a landowner of all beneficial use of its property, the landowner must show that the present return on the property is so low that to require its continued devotion either to its present use or to others permitted under the ordinance would be confiscatory." Goodman v.Zoning Board of Review, 105 R.I. 680, 254 A.2d 743 (1969).
An examination of the whole record reveals that the plaintiff has not demonstrated a deprivation of all beneficial use of its land. The Board had before it the testimony of Mr. James Sloan. Mr. Sloan testified at the hearing that he tried to market the property in question for four (4) months, but was not able to find a buyer. However, Mr. Sloan also stated that said property was marketed only as a single family residence and/or a single family residence with the idea that part of the dwelling could be used as a professional office. Mr. Sloan never stated that he tried to market the property in question as a two family home, a use which not only is a permitted under the ordinance, but perhaps may have been more practical in terms of procuring a buyer considering the relatively large size of the structure. Hence, this Court finds this testimony to be unpersuasive in proving the defendants' argument that she has been deprived of all beneficial use of her land because Mr. Sloan failed to explore a presumably viable option which may have produced a buyer for the defendant.
Additionally, Mr. Sloan testified that, in his opinion, the property in question is unmarketable as a residential use because of its size and location. However, he did not provide specific figures as to how much money the defendant was asking for the property, the amount of any offers that may have been received, and/or the amount of money the property is worth as a residential use. Additionally, Mr. Sloan did not provide any figures or data relating to how much money it would cost the defendant to convert the property to a two family home and/or how much money said house would be worth after said conversion. In Gaglione v.DiMuro, 478 A.2d 573 (R.I. 1984), the court found that a report containing the opinion that single family homes upon certain property would be "economically unfeasible" and which report lacked any ". . . specific financial information demonstrating that the present return on the parcel reflects a confiscatory taking by the city through enforcement of its zoning classification," could not be considered "probative evidence."Id. 478 A.2d at 576. Hence, in light of Gaglione, this Court finds Mr. Sloans' opinion as to the marketability of the defendants' property as a residential use to be lacking in "probative value."
The Board additionally had before it the testimony of Mr. Louis Jackvony. Mr. Jackvony testified that he has been trying to sell this property for two (2) years but that he has been unable to find a buyer. He stated that, in his opinion, the size and location make the house less attractive as a residential use. However, Mr. Jackvony unequivocally stated that he had received offers from parties interested in converting the property to a two (2) family home to rent to students, which is one of the types of uses for which the property is zoned. This evidence alone demonstrates that the defendant has not been deprived of all beneficial use of her property. Indeed, although Mr. Jackvony never stated how much money was offered or how much money it would cost the defendant to convert the property, his own testimony establishes that there is, at the very least, some market for the property.
However, even assuming, arguendo, that the offers received were for a much smaller amount than what defendant would have received from the sale of the property if the variance were granted, or that it would cost the defendant a substantial amount of money to convert the property, this Court finds that the plaintiff has not carried its burden of demonstrating an "unnecessary hardship." Case law clearly distinguishes "unnecessary hardship" from "a more profitable use" Rhode IslandHospital Trust, 523 A.2d at 862; Sundin v. Zoning Board ofReview of the City of Warwick, 98 R.I. 164 [98 R.I. 161], 200 A.2d 459
(1964); or a "personal inconvenience"; Gartsu v. Zoning Board of Reviewof the City of Woonsocket, 104 R.I. 719, 721, 248 A.2d 597
(1968); or even "serious financial hardship" Rhode IslandHospital Trust National Bank, 523 A.2d at 865. In Rhode IslandHospital Trust National Bank, the Court held that evidence presented to a zoning board that an eighteen (18) unit apartment building would be a more beneficial and profitable use than a one or two family home was "insufficient" to demonstrate an "unnecessary hardship" warranting variance. Id. at 864. Similarly, in Franco v. Zoning Board of Review of the Town ofSmithfield, 90 R.I. 210, 156 A.2d 914 (1959), the court held that a petitioners added expenditures for fill to prepare a site for its zoned use constituted a financial burden which does not rise to the level of "unnecessary hardship" required for a variance. Franco. Finally, in Sundin, the Court held that a greater expenditure of funds that was required to provide adequate sewerage facilities for single family homes than for the proposed use or the land as an apartment house, golf course and clubhouse demonstrated to a reviewing court that current zoning denied the applicant the most profitable use, not all beneficial use of his land. Sundin 98 R.I. at 161. The defendants' potential cost of converting the house to a two (2) family use or potential loss of profits incurred as a result of selling the property to someone who would have to convert the property him/herself are analogous to the financial burden, rejected as "unnecessary hardships" in the above cases. Hence the Court finds that the defendant did not meet its burden of proving "unnecessary hardship."
It should be additionally noted that Mr. Jackvony and Mr. Sloan both argued to the board that the defendant should be granted the variance she seeks because of the fact that Smith Street is no longer strictly a residential zone, but rather contains a mixture of commercial and residential uses. This court does not agree. The Rhode Island Supreme Court has held that a zoning board can only grant a variance from a zoning ordinance if the petitioning party demonstrates that a literal application of the ordinance will cause "unnecessary hardship." Rozes, 120 R.I. at 518. A zoning board cannot grant a variance simply because the property in question, although zoned residential, is no longer suited for such purposes. Allan v. Zoning Board of Reviewof the City of Warwick, 79 R.I. 413, 415, 89 A.2d 364 (1952). This would amount to an attempt to amend the zoning ordinance, a power vested exclusively in the respective city or town council.Id. 79 R.I. at 415. As stated earlier, the defendant did not sufficiently prove that a literal application of the zoning ordinance would cause "unnecessary hardship." Hence, the board did not have the power to grant the variance at bar merely because the area in which the property is located already contains a mixture of uses because this would amount to an amendment of the zoning ordinance. If the defendant feels that she should be able to use her property for commercial purposes, then the appropriate avenue is to petition the city council to amend the zoning ordinance.
After review of the entire record and oral argument presented by counsel, this court finds that the decision of the zoning board is not supported by reliable, probative, and substantial evidence and is clearly erroneous. For the reasons herein set out, the decision of the zoning board of review of the City of Providence must be and hereby is reversed.
Counsel shall submit the appropriate Order for entry.
[1] Section 42(A) of the Providence Zoning Ordinance permits this type of mixed use as long as the occupant of the office lives in the house.