[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is an appeal from a June 13, 1991 decision of the Zoning Board of Review of the City of Cranston (hereinafter "1991 Board"). The plaintiffs in this matter seek a reversal of the Board's decision to grant the application for relief filed by United Care Properties and CC Acquisition Corp. Jurisdiction in this Court is pursuant to G.L. 1956 (1988 Reenactment) §45-24-20.
United Care Properties owns the Cedar Crest Nursing Centre (hereinafter "Centre"). The Centre is used as a nursing home and is located at 125 Scituate Avenue, Cranston, Rhode Island in residential zoning district A-12. The Centre was built and originally owned by its founder, Albert Puerini. (Transcript at 3-4). Use of the Centre as a nursing home in district A-12 was and continues to be a prohibited use. The Code of the City ofCranston Rhode Island, § 30-15 (1970) (hereinafter "CranstonZoning Ordinance"). Such a use of the property was approved, however, pursuant to a 1967 decision of the Cranston Zoning Board (hereinafter "1967 Board") to permit the erection of a 90-95 bed nursing facility.
In 1970, the Centre was opened and began functioning with 118 beds. Since 1980, the facility has operated at a 135 bed capacity. (Transcript at 6). A review of the record indicates that nobody ever appealed the 1967 Board's decision or sought the Board's permission to exceed 95 beds. In approximately 1984, Dr. Puerini sold the Centre to United Care Properties. (Transcript at 9). Later, in 1992, CC Acquisition Corp. entered into an agreement to purchase the Centre from United Care Properties. Prior to the closing, United Care Properties and CC Acquisition Corp. (hereinafter "defendants") filed an application with the 1991 Board to "clarify" the record regarding the use of the Centre as a two story extended nursing facility with 135 beds (Transcript at 3). In essence, they sought to have the 90-95 bed condition of the 1967 variance changed to reflect "the correct number of beds allowed by the State Department of Health, to wit, 135." (Defendants' Application for Exception or Variation).
A public hearing was held on the application on June 12, 1991. The defendants presented to the 1991 Board the testimony of numerous witnesses. The only opponent of the application was Frank Gaglione of 23 Alderbrook Dr., Cranston, Rhode Island. (Transcript at 26). On June 13, the 1991 Board issued a decision granting "the application as presented." (Board Decision at 4). On June 27, 1991 Elmo Vendettuoli, James Vendettuoli and Frank Gaglione (hereinafter "plaintiffs") appealed the decision to this Court.
Standard of Appellate Review
Pursuant to Rhode Island General Laws § 45-24-20(d), the Superior Court possesses appellate jurisdiction to review zoning board decisions. Section 45-24-20(d) provides in pertinent part:
 45-24-20. Appeals to Superior Court
 (d) The court shall not substitute its judgment for that of the zoning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are: (1) in violation of constitutional, statutory or ordinance provisions;(2) in excess of the authority granted to the zoning board by statute or ordinance; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing a zoning board decision, the Superior Court may neither substitute its judgment for that of the zoning board nor examine the weight of the evidence. Salve Regina v. Zoning Boardof Review, 594 A.2d 878, 880 (R.I. 1991). Rather, the court "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Board of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979). This requisite "substantial evidence" is defined "as more than a scintilla but less than a preponderance." Apostolou v. Genovesi, 388 A.2d 821, 824 (R.I. 1978). Where the court is able to satisfy itself from the record that a zoning board's decision was either correct or erroneous, the decision will be sustained in the interests of avoiding delay and inconvenience. See Richards v. Zoning Bd. of Providence,100 R.I. 212, 219-20, 213 A.2d 814, 818 (1965).
The threshold issue is whether the plaintiffs have standing to appeal the 1991 Board's decision. Resolution of this issue hinges upon whether the plaintiffs are "aggrieved" persons under G.L. 45-24-20. In DiIorio v. Zoning Board of E. Providence, the Supreme court of Rhode Island held that aggrievement exists where "proximity" is established, 105 R.I. 357, 361 (1969), and "proximity" denotes "a closeness or nearness of the properties involved." Id.
In the instant action, the record indicates that the plaintiffs Elmo and James Vendettuoli own real estate located within four hundred (400) feet of the Centre. Such a distance certainly constitutes a "nearness" of the properties involved. Furthermore, § 30-49(g) of the Cranston Zoning Ordinance
provides that the Cranston Zoning Board must give written notice of the time and place of a public hearing before the board to owners of real estate situated within four hundred feet of the property which is the subject of the hearing. Section 30-49 continues to provide that the notice must contain a statement apprising such landowners that they may appeal the board's decision to the Superior Court. Id. Accordingly, the court finds that the plaintiffs have standing to appeal the 1991 Board's decision to this Court pursuant to § 45-24-20.
On appeal, the plaintiffs maintain that use of the Centre as a 135 bed nursing home is in derogation of the Cranston ZoningOrdinance. They essentially base their claim upon the contention that the 1991 Board should not have granted the defendants' April 29, 1991 application for zoning relief and, in turn, that the current use of the Centre violates the 90-95 bed restriction embodied in the 1967 variance. The defendants first assert in rebuttal that the 1967 Board lacked the authority to limit the permissible number of beds in the Centre.
Section 45-24-20 provides in pertinent part that appeals to the Superior Court must be filed within twenty days after the filing of a zoning board decision. The decision embodying the 90-95 bed restriction is over twenty years old. The propriety of the decision is, therefore, no longer subject to review by this court.[1] Accordingly, resolution of the instant action hinges entirely upon the propriety of the 1991 Board's decision. The court's examination of this decision begins with an inquiry into the power of zoning boards.
In general, "[i]t is reasoned that the power of the board is spent when it renders its decision. Authority to review board decisions is vested in the courts, not in the boards." 4 Anderson, American Law of Zoning 3d § 22.51 at 151.
Indeed, a review of the relevant Rhode Island General Law provisions reveals that § 45-24-20 charges only the Superior Court with the authority to review zoning board decisions. G.L. 1956 (1988 Reenactment) § 45-24-20. Although this provision also empowers zoning boards to modify their findings and decisions "by reason of additional evidence" presented to them pursuant to a Superior Court order made after an appeal from a zoning board decision, this authorization does not allow zoning boards unilaterally to decide to rehear and modify the conditions of their earlier decisions. G.L. 1956 (1988 Reenactment) §45-24-20(b). See G.L. § 45-24-57 (entitled "Administration — Powers and duties of zoning board of review").[2] Yet this is precisely what the 1991 Board purported to do in the case at bar.
The proper legal avenue for relief from the 1967 decision would have been to seek judicial review thereof by filing a petition in 1967 for a statutory writ of certiorari in the Rhode Island Supreme Court pursuant to G.L. 1956 § 45-24-20.[3] Dr. Peurini made no such effort. Instead he erected a nursing home comprised of 118 beds and, later, 135 beds. The twenty day appeals period having lapsed, his successors in interest petitioned the 1991 Board itself to modify the earlier 1967 variance in an effort to obtain the same relief Dr. Peurini chose to forego in 1967. However, the 1991 Board lacked the authority to modify the conditions of the variance granted by the 1967 Board.
In addition to its lack of power unilaterally to decide to modify or "clarify" the 1967 Board's decision, the 1991 Board's jurisdiction to consider the 1967 variance also was limited by the change in the composition of the zoning board's membership intervening between the 1967 decision and 1991. Where the membership of a zoning board changes, the board may not reconsider the record upon which a previously granted variance is predicated. See Coderre v. Zoning Bd. of Review,239 A.2d 729, 730-31 (R.I. 1968). Rather, the board must hear de novo the variance application. Id. In essence, therefore, the 1991 Board's jurisdiction to provide relief to the defendants was limited to its power to grant the defendants a new, second variance for the Centre unencumbered by the 90-95 bed restriction after hearing a variance application de novo.
Although the application at issue requested the 1991 Board to "clarify" the 1967 record, and although the Board "grant[ed] the application as presented," the 1991 Board nevertheless determined that "[t]he Owner and the Applicant have presented sufficient grounds for a variance." Therefore, since the 1991 Board had the jurisdiction to hear and perhaps grant a second application for a variance related to the Centre, the court will treat the defendants' application to the 1991 Board as an application for a second variance.
The propriety of such an application depends first upon its compliance with the doctrine of administrative finality. May-DayRealty Corp. v. Bd. of Appeals, 267 A.2d 400, 401-02 (R.I. 1970). According to this doctrine, "where a zoning board of review has once denied an application for a special exception or variance, such board lacks jurisdiction to grant a later application for the same relief, absent evidence from which the board could first find that subsequent to such denial there has been a material change in circumstances on which that denial was predicated." Gilman v. Zoning Bd. of W. Warwick, 103 R.I. 612, 613 (1968).
In most cases involving application of this doctrine, a first application had been denied and the same relief was sought via a second application.[4] The doctrine is not confined to such circumstances. See 3 Anderson, American Law of Zoning 3d, § 22.5 at 156-57 ("Unless a change of circumstances has intervened, the doctrine of res judicata applies and the board may not reopen the matter and reconsider its decision.").
Indeed, the doctrine of administrative finality bars an applicant who had received an exception subject to certain conditions from obtaining a second exception unencumbered by the restrictions "absent a showing of changed circumstances."Audette v. Coletti, 539 A.2d 520, 521-22 (R.I. 1988). Accordingly, even if the defendants' application to the 1991 Board is treated as an application for a subsequent variance, the propriety of it depends upon compliance with the doctrine of administrative finality.
In the instant action, an examination of the record indicates that the defendants did not demonstrate a substantial change in circumstances to justify the board's hearing the April 29, 1991 application for relief. Pursuant to the foregoing legal discussion, this court therefore holds that the defendants' application for a second variance should not have been heard by the 1991 Board, for petitioners failed to demonstrate a substantial change in circumstances, and thus their application was barred by the doctrine of administrative finality.
Even assuming, arguendo, that the Board had jurisdiction to entertain the defendants' application, the record is devoid of sufficient, probative evidence to support the granting of a subsequent variance. The granting of a variance is proper only upon a show that strict adherence to the relevant zoning restrictions will result in unnecessary hardship. Properties v.Zoning Bd. of Review, 601 A.2d 953, 954 (R.I. 1992). It is well settled that a mere showing of a more profitable use that would result in a financial hardship if denied does not satisfy the requirements of our law. Rhode Island Hospital Trust NationalBank v. E. Providence Zoning Bd. of Review, 444 A.2d 862, 864 (R.I. 1982). However, a showing "`that the present return on the property [is] so low that to require its continued devotion either to its present use or to others permitted under the ordinance would be confiscatory'" does entitle a landowner to a variance. Gaglione v. DiMuro, 478 A.2d 573, 576 (R.I. 1984) (quoting Goodman v. Zoning Bd. of Review of Cranston,254 A.2d 743, 746 (R.I. 1969)). To prove such economic unfeasibility, a petitioner cannot offer mere conclusory statements of economic hardship unsupported by cost data and/or financial statements.Gaglione, 478 A.2d at 567.
In this case, the Centre's accountant, Richard DiRienzo, opined that the Centre will lose $250,000 to $300,000 per year if the 90-95 bed restriction is enforced. (Transcript at 22). Furthermore, William Coyle, Jr., a real estate appraiser, opined simply that to "readopt" the Centre to another use would be economically prohibitive. (Transcript of 25). Without the support of relevant financial data or information, the testimony of those witnesses lacks probative force and constitutes a meaningless, "`naked assertion of economic unfeasibility.'" See id. (quotingGoodman, 254 A.2d at 746); Gartsu v. Zoning Bd. ofWoonsocket, 104 R.I. 719, 719-20 (1968).
Furthermore, the testimony of Susan Whipple that "if the nursing home had to reduce the number of beds from 135 to 95, it would be virtually impossible to relocate 40 patients because there are a scarcity of nursing home beds and there are waiting lists at every nursing home in Rhode Island" does not bolster the defendants' case for several reasons. The defendants own willful violation of the 1967 variance's bed limitation brought about this relocation problem. Under such circumstances, zoning boards can not provide relief, for they lack the power to alleviate self-created hardship. Rozes v. Smith, 120 R.I. 515, 521-22 (1978). Even if such a power existed, Susan Whipple's testimony simply would be irrelevant to a zoning board whose function is to administer rather than amend the Cranston Zoning Ordinance.Arc-Lan Co. v. Zoning Bd. of Review, 261 A.2d 280, 282 (R.I. 1970).
The town council of Cranston was empowered by a grant of authority from the state to regulate the use of property within the city's borders. Atlantic Tubing, Etc. Co. v. City Council,105 R.I. 584, 587 (1969). Zoning legislation is one means by which a municipality may conduct such regulation, and in enacting or amending a zoning ordinance, a city exercises the state's police power. City of Providence v. Stephens, 47 R.I. 387, 391-92 (1926). Accordingly, a town council may regulate land use by amending its zoning ordinance so as to "promote the public health and general welfare." Johnson Wales College v.DiPrete, 448 A.2d 1271, 1279 (R.I. 1982).
In the instant case, the 1991 Board based its decision in part on a letter from the City Plan Commission recommending approval of the defendants' application. (1991 Board's decision at 3-4). As the immediate legal maxims indicate, however, only the Town Council of Cranston may amend the Cranston ZoningOrdinance expressly to promote the public health and general welfare by reducing Rhode Island's shortage of nursing home beds. Accordingly, if the city of Cranston has any interest is expanding the state's nursing home bed capacity, it should express its views to the Town Council rather than the zoning board. Since the record before this court does not contain sufficient probative evidence that enforcement of the 90-95 bed condition would be confiscatory, especially given the state's vital shortage of nursing home beds, any award of a subsequent variance by the 1991 Board would have been erroneous.
For the foregoing reasons, the court finds, after a review of the whole record, that the Cranston Zoning Board was without jurisdiction to entertain the defendants' application to "clarify" the 1967 record, that any decision by the Board to grant defendants a subsequent variance was not supported by substantial, probative evidence in the record, and that use of the Centre as a nursing home with more than 95 beds is, in turn, a prohibited use. As the decision of the zoning Board of Cranston is in excess of the authority granted to the board, is made upon unlawful procedure and is not supported by substantial, probative evidence, its June 13, 1991 decision must be and is hereby reversed. Counsel shall submit the appropriate judgment for entry by the Court within ten (10) days.
[1] Zoning boards currently have the power to impose conditions upon the grant of a variance. G.L. 1956 (1988 Reenactment) §45-24-19; Town of Warren v. Frost, 301 A.2d 572, 573 (R.I. 1973).
[2] Had this been a timely appeal from the 1967 Board's decision, and had this court ordered the 1967 Board to take additional evidence, the 1967 board could have modified the 90-95 bed condition based upon any additional evidence actually presented.
[3] Until 1969, the Rhode Island Supreme Court was charged with the responsibility of reviewing zoning board decisions. Hassellv. Zoning Bd. of Review, 275 A.2d 646, 647 (R.I. 1971).
[4] See May-Day Realty Corp., 267 A.2d at 401-02; Gilman,
103 R.I. at 613; Burke v. Zoning Bd. of Review, 238 A.2d 50, 52-53 (R.I. 1968); Marks v. Zoning Bd. of City of Providence,203 A.2d 761, 762-63 (R.I. 1964); Churchill v. Zoning Bd. ofReview, 201 A.2d 480, 481 (R.I. 1964); Day v. Zoning Bd. ofReview of City of Cranston, 167 A.2d 136, 139 (R.I. 1961).