DECISION
Before the Court is an appeal from a decision of the Zoning Board of Review of the Town of Warren (Board). Gary Lepore and Shirley Lepore (appellants) seek reversal of the Board's decision of October 3, 2000 (Decision) granting the application of Jules J. Cardin (applicant) for a dimensional variance. This Court has jurisdiction pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
The subject premises are designated as Assessor's Plat 16, Lots 150 and 151, and are located at the corner of Bay View Avenue and Brownell Streets with the address of 2 Bay View Avenue, Warren, Rhode Island. If the premises continued to utilize this Bay View Avenue address, the proposed garage would be in the front yard. However, if the premises assumed a Brownell Street address, the garage would be in the side yard. A change in address to Brownell Street was recommended by the Board and adopted by the applicant. In so doing, the relief requested from the Board changed to side yard and rear yard setback variances rather than front yard relief. The premises are located in a R-40 Residence District, as well as a Residential Village District.
The applicant filed an application for a dimensional variance from the requirements of the Warren Zoning Ordinance (Ordinance). Specifically, he sought a side yard dimensional variance in the amount of 13 feet. Moreover, he sought to construct a garage facing Bay View Avenue, necessitating a rear yard dimensional variance in the amount of 17.9 feet from the rear boundary of the property. The Zoning Ordinance requires a 10,000 square foot lot in a R-40 Residence District to have a rear yard depth of 35 feet and a side yard width of 15 feet. (Article XIII, section 32-77.) The cottage currently located on the premises is 8.25 feet from the property line on Bay View Avenue and 15.75 feet from the property line on Brownell Street, which results in nonconforming setbacks. The cottage will be demolished once construction is completed.
The Board conducted a hearing on the application on August 16, 2000. The hearing was continued to September 20, 2000. During this later hearing, the Board heard testimony in favor of the application from the applicant and his experts, Mr. Ira Rakatansky, a registered architect, and Mr. Joseph Riker, a qualified real estate appraiser. Furthermore, the Board heard the testimony of Mr. and Mrs. Lepore, abutting neighbors, in opposition to the application. At the time of the hearing, Mr. Lepore was working toward his architect's degree, so he was not qualified as an expert by the Board.
After hearing all the testimony, the Board voted 4-1 in favor of granting the relief requested. The Board conditioned the approval on the applicant's demolition of the existing cottage presently located on the premises. The Board issued a written decision on October 3, 2000.
The appellants timely appealed the Board's decision on October 17, 2000. On appeal, the appellants raise a number of arguments including that the Board exceeded its authority by granting a variance in excess of one-third of the required distance; that the Board failed to fully grant the relief requested; that the applicant failed to provide any evidence showing that the hardship from which he sought relief was due to the unique characteristics of the land; that the applicant has not shown that there is no reasonable alternative to the relief requested; and that the Board's decision does not contain the findings of fact required by the Ordinance.
 Standard of Review
The standard of review for this Court's appellate consideration of the Decision is outlined in R.I. Gen. Laws § 45-24-69(D), which states:
 "(D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a zoning board decision, this Court must examine the entire certified record to determine whether substantial evidence exists to support the finding of the board. Salve Regina College v. Zoning Bd. of Review, 594 A.2d 878, 880 (R.I. 1991) (citing DeStefano v. Zoning Bd. of Review of Warwick, 122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979)); Restivo v. Lynch, 707 A.2d 663 (R.I. 1998). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a preponderance." Caswell v. George Sherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981) (citing Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). The essential function of the zoning board is to weigh evidence with discretion to accept or reject the evidence presented. Bellevue Shopping Center Associates v. Chase,574 A.2d 760, 764 (R.I. 1990). Moreover, this Court should exercise restraint in substituting its judgment for that of the zoning board and is compelled to uphold the board's decision if the Court "conscientiously finds" that the decision is supported by substantial evidence contained in the record. Mendonsa v. Corey, 495 A.2d 257 (R.I. 1985) (quoting Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978)). It is only if the record is "completely bereft of competent evidentiary support" that a board of appeal's decision may be reversed. Sartor v. Coastal Resources Management Council of Rhode Island, 434 A.2d 266, 272 (R.I. 1981).
 Dimensional Variance
G.L. § 45-24-31(61)(b) defines a dimensional variance as:
 "[p]ermission to depart from the dimensional requirements of a zoning ordinance, where the applicant for the requested relief has shown, by evidence upon the record, that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations. However, the fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief."
Likewise, Article IV section 32-26 of the Ordinance states:
 "[i]n granting a variance, the Zoning Board of Review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 A. That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure, and not to the general characteristics of the surrounding area, and is not due to a physical or economic disability of the applicant
 . . .
 B. That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 C. That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of this chapter or the Comprehensive Plan; and
 D. That the relief to be granted is the least relief necessary."
Furthermore, Article IV, section 32-28 provides:
 "[T]he Zoning Board of Review shall, in addition to the above general standards, require that evidence be entered into the record of the proceedings showing that the hardship that will be suffered by the owner of the property if the dimensional variance is not granted shall amount to more than a mere inconvenience. This shall mean that there is no other reasonable alternative to enjoy a legally permitted beneficial use of one's property. The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted shall not be grounds for relief. In addition, in granting a dimensional variance relating to a side or rear yard requirement, the Zoning Board of Review shall not permit such a variance in excess of one-third (1/3) of the required distance." (Emphasis added.)
Recently, the Supreme Court of Rhode Island interpreted G.L. §45-24-41(d)(2) and held that the subsection established a higher standard for dimensional variance applicants regarding their burden of proof. Sciacca v. Caruso, No. 99-44-1-A., slip op. at 8 (R.I., filed April 2, 2001). The court stated "[t]his new statutory burden of proof created by the 1991 amendment effectively sounded the death knell for the old Viti doctrine that allowed a property owner to obtain a dimensional variance simply by demonstrating an adverse impact amounting to more than a mere inconvenience." Id. at 8. Applicants are now required to show that "no other reasonable alternative" exists for the enjoyment of the property's legal beneficial use. Id.
The appellants' first argument on appeal is that the applicant failed to show that without the dimensional variance requested there is "no other reasonable alternative to enjoy a legally permitted beneficial use of one's property." As previously stated, the court in Sciacca construed G.L. § 45-24-41(d)(2) as imposing a heightened standard for applicants petitioning for dimensional variances. A review of the record reveals that the Zoning Board paid cursory attention to other possible site alternatives for the garage. During the hearing, the applicant testified that the proposed location of the garage was due in part to the fact that the "septic system was not designed for vehicle traffic." (Tr. at 1.) He further stated that the individual who designed the septic system "doubted that we could have a driveway go over that system." (Tr. at 1.) Discussions with the architect revealed that other locations for the garage, though feasible, would "mak[e] it very difficult to enter and leave the garage and would face a lot of cost because of the way that garage would be situated we'd have to redesign the whole house." (Tr. at 2.) Thus, the applicant stated that according to "[t]he architect's suggestion: this is the best design for the project." (Tr. at 11.)
The Board in its written Decision does not address the issue of other possible sites for the garage that would not entail variance relief. The Board found "[t]hat the hardship from which the Applicant seeks relief is due to the unique characteristics of the subject land and structure presently located on the premises." In making this finding, it dealt directly with one of the legal preconditions necessary for granting variance relief, as set forth in § 45-24-41(a). However, that section also requires that the hardship "is not due to a physical or economic disability of the applicant." The transcript of the Board hearing tends to show that alternatives were available for the location of the garage although these alternatives came at an increased cost. The Court has previously held that "statements of economic unfeasibility that are mere conclusions and are unsupported by financial statements or cost data do not constitute probative evidence." Gaglione v. DiMuro, 478 A.2d 573, 576 (R.I. 1984). Moreover, "[a] naked assertion of economic unfeasibility is meaningless." Id. Given that there were other reasonable alternatives that permit the beneficial use of the property, the appellants failed to carry the burden of proof and the Board erroneously granted the variance relief requested.
The appellants next argue that in granting the rear yard set back variance of 17 feet 3 inches, the Board exceeded its authority under Article IV, section 32-28 of the Ordinance. As provided in the Ordinance, when granting dimensional variances with respect to side or rear yard requirements, the Board is limited to allowing not more than one-third of the required distance. The dimensions of the premises at issue are 100 feet by 100 feet or 10,000 square feet in a R-40 Residence District and Residential Village District. As such, the premises are a substandard lot of record to which sections 32-42 and 32-77.1 of the Ordinance apply. The appellants argue that under Article XIII, section 32-77, the rear yard setback for the premises is 35 feet. Thus the maximum rear yard variance that could be granted to the applicant would be 11.67 feet. Since the Board granted a rear yard set back variance of 17 feet 3 inches, (Def. Board's Answer ¶ 16), it exceeded the authority granted it under the Ordinance.
In turn, the applicant responds by noting that although the premises are located in a R-40 Residence District, they are also situated in a Residential Village District. A Residential Village District "is an overlay district applied to certain areas of compact residential development in the Touisset area of Warren, for which modified dimensional regulations are applied to substandard lots of record." (Article VII, section 32-42.) The Ordinance further provides that:
 "[t]he dimensional regulations of the Residential Village (RV) Overlay District apply only to legally created substandard lots within these districts; they allow for the modification of setbacks and building coverage within these lots which emulate the configuration and dimensional profile of the prevalent building pattern rather than the requirements of the underlying district." (Article 13, section 32-77.1.)
The applicant directs the Court's attention to the expert testimony received by the Board during the September 20, 2000 hearing, which tends to show that the setback relief request would follow the prevalent building patterns in the area. Mr. Rakatansky, a registered architect who was qualified as an expert by the Board, stated that "we have the house on the back of the lot and [it] fits very well for circulation, building and the scale of it fits into the neighborhood." (Tr. at 2.) In addition, Mr. Riker testified that "it's obvious more than half of [the other houses in the area] don't conform to the existing dimensional requirements of the Ordinance . . . it certainly is not out of harmony with anything that is in Touisset at this time." (Tr. at 5.)
Though it may appear that section 32-77.1 supports the Board's actions in this instance, a further examination of the Ordinance reveals otherwise. Section 32-77.1(B) provides:
 "[t]he modified dimensional regulations to be applied to such lots shall be determined by the size of the lot; the dimensional regulations to be applied shall be those contained in Section 32-77 for the zoning district which has a minimum lot size equal to or consecutively larger than the area of the lot in question. For example, development of a lot with twelve thousand (12,000) square feet of area in the RV District shall conform to the front, rear and side yard setbacks and building lot coverage requirements for a lot in the R-15 District."
Thus the Ordinance specifies the procedure by which the Board can modify setbacks in a Residential Village District. Section 32-77 sets the standards for a single family dwelling in an R-40 Residence District with a minimum lot area of 40,000 feet and requires a rear yard depth of 60 feet. The rear yard depth requirement for a 10,000 square foot lot in a R-40 Residence District and Residential Village District is lowered to 35 feet. The plain language of section 32-28 provides that the maximum rear yard setback variance that could be granted by the Board is one-third (1/3) of the required distance, in the instant case, one-third of 35 feet or 11.67 feet. Since the Board granted a rear yard setback variance for 17 feet 3 inches, it exceeded the authority granted it under the Ordinance. By granting the relief requested for the rear yard setback, the Board acted contrary to the language found in Article IV, section 32-26(D) of the Ordinance, which stipulates variances granted must be the "least relief necessary."
In addition, this interpretation of the relevant provisions of the Ordinance corresponds with the definition of an overlay district, that is "[a] district established in this zoning ordinance that is superimposed on one (1) or more districts, or parts of districts, and that imposes specified requirements in addition to, but not less than, those otherwise applicable for the underlying district." (Article 23, section 32-130.) Thus while the Board may impose additional requirements on an overlay district, it is prohibited from prescribing less stringent conditions than those applicable in the underlying district. The specific requirements listed in the Ordinance that are imposed for side yard and rear yard setbacks reflect the choices made regarding the general character of the various districts within the Town of Warren. By granting a rear yard setback variance in excess of those provided for in the Ordinance, the Board has awarded relief that will change the character of the area. Consequently, the Board's action also does not fulfill the requirement of Article IV, section 32-26(D) that the granting of variance relief "not alter the general character of the surrounding area."
The appellants' final argument on appeal is that the Board did not fully grant the variance relief requested. The appellants draw the Court's attention to the Minutes of the Board's September 20, 2000 meeting when Board member Keegan made a motion "that this application be granted with the side relief granted because of the change of address to Brownell Street." Since there was no mention of the relief requested for the rear yard setback, the appellants contend that the issue was never decided by the Board. It appears from the record that the Board members were aware that the vote before them involved not merely the side yard variance but the rear yard variance as well. First, the transcript of the September 20, 2000 hearing indicates that during the vote on the Cardin application, one of the Board members stated "I have to oppose because the relief granted is going to be what — 50%?" (Tr. at 15.) Since the side yard relief request was minimal, the Board member's opposition was directed at the rear yard setback relief request, which was greater than what the Board could award. This is precisely the argument advanced by the appellants, and the problem was recognized by one of the Board members.
Second, the best evidence that the Board members granted both the side yard and rear yard variance relief requested is the written decision issued by the Board. Article III, section 32-21 of the Ordinance requires the Board to:
 "make a record of its proceedings and actions, precisely showing its reasons for its decision, the vote of each member participating therein, and the absence of a member or his failure to vote. Decisions shall be recorded and filed in the Office of the Zoning Board of Review within thirty (30) days from the date when the decision was rendered, and shall be a public record."
Pursuant to this mandate, the Board issued a written decision on October 3, 2000. In its written decision, the Board delineated the relief sought by the applicant as "a Side Yard Dimensional Variance in the amount of 13 feet, while the required setback is 15 feet . . . [and] a Rear Yard Dimensional Variance." Also, in its Findings of Fact, the Board states "[t]he Applicant is seeking a Side Yard (minimal) and Rear Yard Dimensional Variance from the Zoning Ordinance." The Board's written decision conditionally granted the "[a]pplicant's request." The Board did not approve only the side yard dimensional variance but rather the applicant's entire relief request. The written Decision demonstrates that the Board did not view Board member Keegan's oversight in mentioning only the side yard relief request in his motion as a motion for partial relief. Rather the Board voted on the motion as one pertaining to the entire relief requested in the application.
After a review of the entire record, this Court finds that the Board exceeded the authority granted to it under the Ordinance and acted in violation of the Ordinance provisions. The Court further finds that the Board's Decision is clearly erroneous in view of the reliable and probative evidence. Substantial rights of the appellants have been prejudiced. Accordingly, the Court reverses the October 3, 2000 decision of the Board.
Counsel shall submit the appropriate judgment for entry.