**254 A.2d 743.**

Elliot R. Goodman *et ux. vs.* Zoning Board of Review of the City of Cranston.

June 16, 1969.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This petition for a writ of certiorari was brought by remonstrants to review a decision of the zoning board of the city of Cranston granting the applicants both an exception and a variance and thereby permitting them to construct and operate in a C-1 district a complete automobile dealership facility, a use which will include activities some of which are permitted in a C-4 district and others of which are authorized only in a C-5 district.[1] For the past 44 years the premises to which the application relates have been devoted to the conduct of a nursery business. That use, permitted under the ordinance only in a C-4, C-5 or S-1 district, is nonconforming in the C-1 district where the property is located.

In the view we take of this case an extensive reference to the evidence developed at an extended hearing is un-

---

[1] The proposed activities include a salesroom for the display of motor vehicles, outdoor storage and inside repair facilities. These are permitted in both C-4 and C-5 districts. Also proposed is a body repair and paint shop; this use is permitted only in a C-5 district.

682

necessary. It is sufficient to observe by way of background that Forest Hills Nurseries, Inc. is the owner of the premises, and Ford Leasing Development Company has an option to purchase the property "for a sum in excess of $500,000 and less than $600,000." Both corporations joined in the application. The tract to which the application relates is irregularly shaped; it contains approximately 313,000 square feet, and fronts for about 400 feet on Reservoir Avenue, a six-lane, 80-foot-wide heavily traveled highway; and it is abutted on the west by the Pocasset River. Because the property is low-lying and in some areas below the grade of adjoining streets it is subject to flooding from the river.

The board's grant of an exception is susceptible to summary disposition. It acted pursuant to section 30-49(m),[2] and granted the exception after first finding that the conditions precedent prescribed by the ordinance had been established and that the proposed complete automobile dealership facility would be no more harmful or objectionable in the general neighborhood where the premises are located than is the existing nonconforming nursery. Since then, however, and prior to the case being argued here, the ordinance was amended and the provision permitting a nonconforming use to be changed to one no more harmful or objectionable was deleted. The effect of that amendment

---

[2]The pertinent portion of section 30-49 (m) of the zoning ordinance, as it read when this case was decided by the zoning board provided: "The Zoning Board of Review shall have the power in appropriate cases and subject to appropriate conditions and safeguards to make special exceptions to the terms of this ordinance in harmony with its general purpose and intent and where such exceptions are reasonably necessary for the convenience and welfare of the public and where appropriate use of neighboring property will not be substantially injured in the following cases:
* * *
* * *
"To authorize the change of a nonconforming use to one no more harmful or objectionable."

was to negate and render nugatory the board's action since this court reads zoning ordinances as they are written when the case comes here for review, rather than as they were written when the board acted, *A. Ferland & Sons* v. *Zoning Board of Review,* 105 R. I. 275, 251 A.2d 536; *Tantimonaco* v. *Zoning Board of Review,* 100 R. I. 615, 218 A.2d 480.

That the act was amended is without any significance on the variance question since the board's authority to grant that kind of relief stems from the enabling legislation, rather than from the zoning regulations enacted by the local legislature. *Coderre* v. *Zoning Board of Review,* 102 R. I. 327, 230 A.2d 247; *Gardiner* v. *Zoning Board of Review,* 101 R. I. 681, 226 A.2d 698.

When we examine the variance grant we need go no further than the enabling legislation requirement which imposes upon an applicant for that kind of relief the burden of establishing that, owing to special conditions, a literal enforcement of the zoning ordinance regulations will result in unnecessary hardship. See G. L. 1956, §45-24-19(c). That requirement has many times been defined and explained. It presupposes that a rigid insistence upon the property being devoted to a use permitted by the zoning regulations will deprive its owner of all beneficial use of his property and will therefore be confiscatory. *Bilodeau* v. *Zoning Board of Review* 103 R. I. 149, 235 A.2d 665; *R-N-R Associates* v. *Zoning Board of Review,* 100 R. I. 7, 210 A.2d 653; *Kraemer* v. *Zoning Board of Review,* 98 R. I. 328, 201 A.2d 643.

To establish the prerequisite hardship these applicants were required to prove that the property could not be beneficially utilized or profitably operated if used as a nursery or for any other purpose allowed in a C-1 district. *Griffin* v. *Zoning Board of Review,* 98 R. I. 233, 200 A.2d 700; *Cole* v. *Zoning Board of Review,* 97 R. I. 220, 197 A.2d 166; *Strauss* v. *Zoning Board of Review,* 72 R. I. 107, 48 A.2d 349. To show that some other use not allowed in a

C-1 district might be more profitable or that the return would be more favorable if the relief sought were granted is not enough. *Vican* v. *Zoning Board of Review,* 103 R. I. 429, 238 A.2d 365; *Sundin* v. *Zoning Board of Review,* 98 R. I. 161, 200 A.2d 459. The only evidence the applicants offered to satisfy their burden was adduced from an officer of Forest Hills Nurseries, Inc., and from a real estate expert who appeared on their behalf.

The corporation officer testified that the property was no longer large enough to supply the needs of his company's business. That business, he said, had vastly expanded over the 44 years it had been in existence, and he went on to say that to meet those increased needs the company was also operating from a 300-acre tract in another part of the state. He concluded that "\* \* \* it is economically unfeasible to operate and grow any crops on seven acres of business property." That statement, obviously intended to establish that undue hardship will result if the use of the premises is restricted to permissive possibilities, does not achieve its purpose. It is nothing more than a bald statement that in the circumstances described it would be "economically unfeasible" for this particular nursery operator at this particular place to operate and grow any crops on this particular seven acres of "business property." It tells us nothing about the cost of the property or whether the conclusion of economic unfeasibility is premised upon that cost, or upon the more than a half million dollars which the other applicant might pay for it if, after rezoning, it exercises its option to purchase. It lacks any support whatsoever from a balance sheet, or from a profit and loss statement, or indeed from any financial information or data. It is completely devoid of anything which in any way assists in reaching an informed or an intelligent opinion that the property is incapable of yielding a return sufficient to

justify its continued use either as a nursery or for any other permissive possibility. In short, it is conclusional rather than factual, and therefore lacks probative force. *Coupe* v. *Zoning Board of Review,* 104 R. I. 58, 241 A.2d 821; *Pellini* v. *Zoning Board of Review,* 103 R. I. 484, 238 A.2d 744; *Marks* v. *Zoning Board of Review,* 102 R. I. 545, 232 A.2d 382.

Plainly, the applicants, if entitled to the relief they seek, were burdened with showing that the present return on the property was so low that to require its continued devotion either to its present use or to others permitted under the ordinance would be confiscatory. Without such a showing, their naked assertion of economic unfeasibility is meaningless. It stands on no higher footing than the testimony that an addition to an existing cafe was required in order to permit the business "to economically continue." That bare affirmation, unsubstantiated by any financial data, was held insufficient to justify a variance in *Gartsu* v. *Zoning Board of Review,* 104 R. I. 719, 248 A.2d 597.

The expert's testimony, although extensive, adds nothing. What he said was expressly tied to what land use he deemed would be to the greatest benefit of the community in a planning sense, and to what a proper balance of land uses would be. His basic premise was "* * * that anyone using this land would put it to its highest and best use, [and] would develop it in a sense that it would conform with its intrinsic value." He did not relate his terms "highest and best use" and "intrinsic value" to a development of these premises as presently zoned, but rather to how they should be utilized if they were rezoned in accordance with community planning dictates. The issue here, however, is not what is in the best interests of the community in a planning sense, but with whether a variance should be granted and a nonpermitted use be substituted for the use presently in existence. On that issue the concern is not

with community planning, or with "highest and best use" or with "intrinsic value," but with a "dollars and cents" approach and with whether the financial picture, either present or projected to all alternative permitted uses, is so bleak that it may be concluded that the owner is being deprived of all beneficial use of his property. *Griffin* v. *Zoning Board of Review, supra; Strauss* v. *Zoning Board of Review, supra.*

Finally, we find that the board, like the expert, identified that which is economically unfeasible in the real estate marketplace with undue hardship in the zoning sense. This is apparent from its decision, the gist of which on the hardship issue is found in its conclusion that "* * * it is obviously economically unfeasible to continue to operate a nursery on land with such a high intrinsic value * * *." What they say may well be true, if by "intrinsic value" they meant what the property would sell for if the variance were granted. Given that meaning, it would also probably be true that from a business and investment point of view it would be economically unfeasible to use for nursery purposes seven acres of land which, if there were no zoning regulations or if the property were rezoned so as to permit the proposed use, would sell for between $500,000 and $600,000. Such a meaning, however, is foreign to zoning. On the other hand, if by "intrinsic value" they meant what the property cost or even what it might be worth if restricted to permitted uses, they point to no supporting evidentiary matter. On either basis, then, there is no factual matter referred to by the board which justifies the conclusion that the applicants have met the test of establishing that the return on these premises, if devoted to a permitted use, is so inadequate as to deprive the owner of all beneficial use.

The petition for certiorari is granted and the decision of the respondent board is quashed.

*Kelly & Butterfield, Charles Butterfield, Jr.,* for petitioners.

*Jeremiah S. Jeremiah, Jr.,* Assistant City Solicitor, *Monti & Monti, Francis A. Monti,* Amicus Curiae, *Marcaccio & Marcaccio, Thomas L. Marcaccio, Jr.,* Amicus Curiae, for respondents.