DECISION
Before this Court is an appeal from a unanimous decision of the Zoning Board of Review of the Town of Cumberland (the "Board"). In its decision, the Board denied Mark Correia and Martha Correia ("Appellants") dimensional relief from the Zoning Ordinance of the Town of Cumberland (the "Ordinance") § 4.1. Appellants seek a reversal of the Board's decision. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts and Travel
In February of 2006, Appellants purchased a vacant lot located at 26 Vermont Avenue, Tax Assessor's Plat 21, Lot 52 in the Town of Cumberland (the "Property"). Prior to Appellants' purchase of the Property, the Board granted dimensional relief to Appellants' predecessor in title, Binchy, LLC. (Tr. 11/14/07 at 5.) Specifically, the Board granted a one foot variance on each side from the 10-foot side yard requirement, and a 15-foot variance from the *Page 2 
25-foot front yard requirement. Id. As a result, the dimensions required the house be at least 9 feet from the side lot lines and at least 10 feet from the front lot line. See id.
In the fall of 2006, Appellants' subcontractor laid the foundation.Id. at 25. In laying the foundation, Appellants relied on certain stakes in the ground which, according to the previous owner, represented the lot's boundary lines. Id. at 10. Appellant, Mr. Correia ("Mr. Correia"), assumed the stakes represented the actual boundary lines and "counted inward" 9 feet from the side yards for the subcontractor to lay down the foundation.[1] Id. The foundation was set at 32 feet long by 24 feet wide. Id. at 11. Appellants began construction of the house around January of 2007. Id. at 25. By March 5, 2007, there was an enclosed structure; that day, Building Inspector, Mr. Madden ("Mr. Madden") performed a rough inspection of the Property.[2] Id. at 26. Mr. Madden testified that during his March inspection, he could see the back left corner of the house was less than 9 feet away from the side property line, thus violating the 9-foot side yard requirement. Id. at 27. At that time, Mr. Madden told Appellants, "[you need] to get a surveyor in here and get this thing straightened out and tell us what was [sic] going on." Id. Mr. Madden also suggested to Appellants that they should stop constructing the house. Id. Additionally, Mr. Madden testified that, "[w]e are not allowed by law to measure [from the stake to the foundation]. . . . That is something that is the ultimate duty of the contractor/owner of the property [sic] to make sure that the foundation is done." Id.
Sometime subsequent to the inspection by Mr. Madden, Appellants had the Property surveyed.[3] Id. at 7, 55-56. The survey revealed the stakes that Appellants relied upon were not representative of the true lot lines. Id. at 7. The survey showed the house violated both the side *Page 3 
and front yard setbacks, in excess of the previous variances granted.Id. In particular, the front and back left corners of the house were only 6.20 and 7.77 feet from the side lot lines, when they should have been at least 9 feet.[4] (See Appellants' Petition for Variance Ex. A.) Additionally, the back right corner was only 8.76 feet from the side lot line, when it also should have been at least 9 feet.[5] (Tr. 11/14/07 at 77-78.) The front left and right corners were only 9.71 feet and 9.00 feet, respectively, from the front lot lines; they should have been at least 10 feet. See id. at 8, 17-19.
Appellants continued to construct the house until it was "ninety to ninety-five percent" complete. Id. at 15, 26. To date, a Certificate of Occupancy has not been issued because the house does not meet the required distances from the side and front lot lines. Id. at 15. As a result, Appellants applied to the Cumberland Planning Board (the "Planning Board") for dimensional relief on October 12, 2007. The Planning Board determined that "the granting of the requested variance would not be inconsistent with the Cumberland Comprehensive Plan." (11/7/07 Memorandum from the Planning Board to the Board at 1.)
Thereafter, the Board held a properly noticed hearing on November 14, 2007, whereupon Appellants, Mr. Madden, and various neighbors testified. Appellants testified they were seeking side and front yard relief because they erroneously relied on stakes already in the ground to lay the foundation. Id. at 7. Mr. Madden testified that he told the Appellants that the side yards appeared to be less than the side setback requirements and that he advised the Appellants to stop work on March 5, 2007. Id. at 26.
At the hearing, an abutter stated that a 32-foot wide house with 9-foot side yards could not comply with the set back requirements because the Property has a trapezoid shape with a 50-foot frontage that narrows towards the back. Id. at 57. Board member, Mr. McCoy agreed and *Page 4 
stated, "[I]f [the lot] starts at 50 and narrows . . . how can we look at that and say it would work with those numbers?" Id. at 98.
Several Board members also noted their hesitation in granting additional dimensional variances. In regards to the size of the house, Board member Mr. Gannon stated, "[T]he burden falls on the builder to make sure [the documents] are correct and accurate." Id. at 93.
Additionally, Board member, Mr. LeBlanc stated:
 I mean we did grant relief on the first go-round in this case, which has been exceeded now. . . . [R]elief was granted. Relief was exceeded. . . . [O]therwise, they would not be here tonight seeking additional relief. . . . [T]he fact is their relief was going nine feet, and they exceeded that. . . . [T]he residents of Cumberland, the Zoning Board itself, the abutters have a right and an expectation that the decisions of the Board would be followed; and Mr. Madden pointed out back in March that there was an issue, and . . . the builders decided to, you know, press forward and hope for the best at the end. Id. at 96-100.
More significantly, Mr. LeBlanc continued to say, "[I]t seems like the burden of this problem is trying to be shifted to the Board; and we've gone through this entire process." Id. at 100. In Mr. LeBlanc's motion to deny, he stated:
 I would make a motion that we deny the request for relief, in that it does not meet the criteria . . . based on the evidence and the discussion we've had here tonight to grant the variance; and specifically, it does not meet the criteria that the hardship not be a result of any prior action of the applicant. . . . And does not result primarily from the desire of the applicant to realize greater financial gain: He built this house on spec. There are real estate `For Sale' signs out in front of the house. Id. at 100-01.
On January 14, 2008, the Board recorded its unanimous decision to deny the requested dimensional variance. The Board explained, "It appears that if a Dimensional Variance is not granted to the applicant, it [sic] will not suffer an adverse impact amounting to more than a mere inconvenience since the relief being sought is a modification of relief that had been granted by *Page 5 
the Zoning Board in February of 2006." Board Decision at 3. Furthermore, the Board found that the Appellants' hardship was self-created because they continued to build after learning that the house violated the Ordinance. Id.
The instant appeal followed the Board's decision. Appellants timely filed their appeal to this Court within twenty days of the Board's decision; the decision was recorded on January 14, 2008, and the appeal was filed on February 1, 2008. On March 6, 2008, the Board acknowledged that it had received a copy of the complaint when it waived service of a summons. Subsequently, the Board filed certified copies of the entire record on April 11, 2008.
 II Standard of Review
The Superior Court's review of a Zoning Board's decision is governed by § 45-24-69. Subsection (d), in relevant part, provides as follows:
 The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In its review, this Court must give deference to the decision of the Board, the members of which are presumed to have special knowledge of the rules related to the administration of zoning *Page 6 
ordinances. Monforte v. Zoning Bd. of Review of East Providence,93 R.I. 447, 449, 176 A.2d 726, 728 (1962). Although this deference must not rise to the level of "blind allegiance," Citizens Savings Bank v.Bell, 605 F. Supp 1033, 1042 (D.R.I. 1985), this Court conducts ade novo review of questions of law, not questions of fact. SeeMonroe v. Town of East Greenwich, 733 A.2d 703, 705 (R.I. 1999) (recognizing the "`traditional judicial' review standard that is applied in administrative-agency actions"); see also Kaveny v. Town ofCumberland Zoning, 875 A.2d 1, 7 (R.I. 2005) (citing Curran v. ChurchCmty. Housing Corp., 672 A.2d 453, 454 (R.I. 1996)) (recognizing a reviewing court is precluded from substituting its own judgment for that of the zoning board in regards to the credibility of witnesses or the weight of evidence concerning questions of fact).
Accordingly, this Court's review is limited to an examination of "the entire record to determine whether `substantial' evidence exists tosupport the board's findings." Mill Realty Assocs. v. Crowe,841 A.2d 668, 672 (R.I. 2004) (quoting DeStefano v. Zoning Bd. of Review,122 R.I. 241, 241, 405 A.2d 1167, 1170 (1979)) (emphasis added). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, [or an] amount more than a scintilla but less than a preponderance." Lischio v. ZoningBd. of Rev. of North Kingstown, 818 A.2d 685, 690 (R.I. 2003) (quotingCaswell v. George Sherman Sand and Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). Should the Court find that such competent evidence exists in the record to support the Board's findings, its decision must be affirmed.Monroe, 733 A.2d at 705.
 III Late Filing of Original Documents
As a preliminary matter, Appellants argue that the Board did not comply with § 45-24-69(a). This section provides, in relevant part, that: *Page 7 
 The zoning board of review shall file the original documents acted upon by it and constituting the record of the case appealed from, or certified copies, together with other facts that may be pertinent, with the clerk of the court within thirty (30) days after being served with a copy of the complaint. Section 45-24-69(a).
The Board was served with a copy of Appellants' complaint on March 6, 2008. That same day, the Solicitor for the Town of Cumberland signed a waiver of service; however, the Board's original documents were not recorded in the Superior Court until April 11, 2008.
Although it has been established that an appellant must file his or her complaint within the defined statute of limitations, the same is not true for a zoning board to file its original documents. See
Section 45-24-69(a) (emphasis added); see also Mauricio v. Zoning Bd. ofReview of City of Pawtucket, 590 A.2d 879, 880 (R.I. 1991) ("[T]he filing of a notice of appeal with the clerk of the Superior Court for the appropriate county is an essential condition precedent to the invoking of the jurisdiction of the Superior Court to review a decision of a zoning board."). On the contrary, compliance with the Board's filing of original documents has been deemed directory rather than mandatory. See 4 Kenneth Young, Anderson's American Law ofZoning § 27.26 (4th ed. 1996) (citing CrossleyAppeal, 13 Pa. D. C. 3d 462 (Pa.Com.Pl. 1980) ("The [ ] limitation [to certify to the court its entire record] has been held directory rather than mandatory."); see also New England Development, LLC v. Berg,913 A.2d 363, 372 (R.I. 2007) (establishing the absence of a sanction in the statute renders the requirement for a planning board to file a written decision within a time limit directory as opposed to mandatory). As a result, strict conformance with the time requirement for the filing of original documents by zoning boards is not a condition precedent to jurisdiction in zoning appeals. See 4 Kenneth Young, Anderson's AmericanLaw of Zoning § 27.26 (4th ed. 1996) (citing Vacca v.Zoning Hearing Bd., 82 Pa. Cmwlth 192, 475 A.2d 1329 (1984)) ("Failure to transmit the record within the time *Page 8 
limited will be excused if it is not the fault of the appellant.");see also Jeff Anthony Properties v. Zoning Bd. of Review of Town ofNorth Providence, 853 A.2d 1226, 1231-32 (R.I. 2004) (citing Griggs v.Estate of Griggs, 845 A.2d 1006 (R.I. 2004) (per curiam)) (distinguishing the zoning appeals statute from the probate appeals statute, which maintains the time requirement to file a certified copy of the record in probate appeals is jurisdictional because the statute specifically states so).
Furthermore, given that the Board provided this Court with the complete record just a few days late, to remand the case to the Board at this juncture would subject the parties to even greater delay.See Roger Williams College v. Gallison, 572 A.2d 61, 62-63 (R.I. 1990) (citing Holliston Sand Co. v. Zoning Board of Review of NorthSmithfield, 98 R.I. 93, 200 A.2d 9 (1964)). This Court is satisfied that the substantial rights of the Appellants have not been prejudiced.
 IV The Board's Decision
Appellants contend that the Board's decision merely memorializes the reasons given to support its denial. Appellants also argue that the Board erred in not addressing every criterion for dimensional relief required by the General Laws and the Ordinance.
Section 45-24-61(a) and Ordinance § 9-8 require the Board to issue a written decision either affirming or denying a request for zoning relief. Pursuant to § 45-24-61(a), "Following a public hearing, the zoning board of review shall render a decision . . . includ[ing] [ ] all findings of fact and conditions, showing the vote of each participating member, and the absence of a member or his or her failure to vote."See Ordinance § 9-7(h). Boards are required to "mak[e] [ ] findings of fact and [ ] appl[y] [ ] legal principles in such manner that a judicial body might review a decision with a reasonable understanding of the manner in which evidentiary conflicts *Page 9 
have been resolved and the provisions of the . . . ordinance applied."Thorpe v. Zoning Bd. or Review of North Kingstown, 492 A.2d 1236, 1237
(R.I. 1985).
This Court acknowledges that when a zoning board's decision is conclusional and fails to apply the proper legal principles, "judicial review of the board's work [is] impossible." Von Bernuth v. Zoning Bd.of Review of Town of New Shoreham, 770 A.2d 396, 401 (R.I. 2001). Generally, courts will not search the record to find supporting evidence for a board's decision. Irish Partnership v. Rommel, 518 A.2d 356, 359
(R.I. 1986). The Supreme Court of Rhode Island has also held that a reviewing court will not speculate as to the grounds the zoning board relied upon if such reasons and evidence supporting those reasons are not revealed in the zoning board's decision. Hopf v. Bd. of Review ofthe City of Newport, 102 R.I. 275, 289, 230 A.2d 420, 428 (1967). With this in mind, our Supreme Court has "caution[ed] zoning boards and their attorneys to make certain that zoning-board [sic] decisions on variance applications (whether use or dimensional) address the evidence in the record before the board that either meets or fails to satisfy each of the legal preconditions for granting such relief, as set forth in § 45-24-41(c) and (d)." Von Bernuth, 770 A.2d at 402.
Upon review of the written decision issued, this Court finds the Board made several findings of fact and applied these findings to the standards set forth for granting a dimensional variance. In particular, the Board found that Appellants "will not suffer an adverse impact amounting to more than a mere inconvenience since the relief being sought is a modification of relief that had been granted by the Zoning Board in February of 2006." Board's Decision at 3 (emphasis added). Further, the Board found that "the hardship complained of was the result of the actions of the applicant" because "the house as existing exceeds the relief granted . . . earlier," and "the builder was notified before the house was completed . . . that there was an issue *Page 10 
with set backs and yet the house is now complete or nearly complete."Id. (Emphasis added.) The Board also made other findings that the facts in the record indicated the hardship was self-created, and Appellants were seeking greater financial gain, via the grant of a variance.Id.
Giving the statutory and Ordinance provisions their ordinary meanings, when granting a variance, the Board must make findings that all of the requirements of § 45-24-41 have been met. See Murphy v. Zoning Board ofReview of the Town of South Kingstown, 959 A.2d 535 (R.I. 2008) (quotingRuggeiro v. City of Providence, 893 A.2d 235, 237 (R.I. 2006)). As such, when an applicant fails to meet its burden of proof as to anyone requirement for the grant of a dimensional variance, it is unnecessary for the Board to address every criterion in its written decision. See Ordinance § 9-8; see also § 45-24-41(c)-(d); see also VonBernuth, 770 A.2d at 401 (finding that applicants seeking a dimensional variance have the burden before the zoning board of showing that a factual basis appears in the record to support their propositions for dimensional relief);[6] see also Perrin v. Town of Kittery,591 A.2d 861, 863 (Me. 1991) (internal citations omitted) ("The law is well established that the burden is on the variance applicant before the Board to prove by competent evidence that all of the statutory requirements for the granting of a variance have been met."). (Emphasis added.) As such, this Court finds the Board was not in violation of the statutory or ordinance provisions, and its decision was made upon lawful procedure by including sufficient evidentiary findings.
 V Dimensional Relief
On appeal, Appellants argue the Board's denial of dimensional relief was arbitrary and capricious and characterized by an abuse of discretion. Conversely, the Board maintains that *Page 11 
Appellants failed to offer substantial evidence in the record to satisfy the standard of proof necessary for the Board to grant dimensional relief. Specifically, the Board argues: (1) Appellants' hardship was not due to the unique characteristics of the parcel or to the general characteristics of the surrounding area; (2) Appellants' hardship was the result of their prior actions and the hardship results primarily from Appellants' desire for greater financial gain; and (3) the relief sought was not the least relief necessary.[7]
In granting dimensional variances, zoning boards must determine that an applicant has satisfied particular standards. See
Section 45-24-41(c); see also Ordinance § 9-8. Specifically, Ordinance § 9-8, which is identical to § 45-24-41(c), provides in pertinent part that the evidence must show:
 (1) The hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant, excepting those physical disabilities addressed in § 45-24-30(16);
 (2) The hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain;
 (3) The granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose of the zoning ordinance or the comprehensive plan upon which the ordinance is based; and
 (4) The relief to be granted is the least relief necessary.
In addition to the above standards for granting a dimensional variance, the Ordinance provides the Board must further require: *Page 12 
 [T]he hardship suffered by the owner of the subject property if the dimensional variance is not granted amounts to more than a mere inconvenience. . . . The fact that a use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief. Ordinance § 9-8(e); Section 45-24-41(d)(2).
In Sciacca v. Caruso, the Rhode Island Supreme Court warned zoning boards to ensure that decisions on variance applications address the evidence in the record, and determine whether that evidence either meets or fails to satisfy each of the legal preconditions set forth in § 45-24-41(c) and (d). 769 A.2d 578, 585 (R.I. 2001); seeLischio, 818 A.2d at 692. Hence, it is this Court's role to determine whether the Board had competent evidence in the record to support its findings that Appellants failed to satisfy one or more of the legal preconditions for dimensional relief.
 A Self-Created Hardship
Appellants argue that the Board erred in concluding that Appellants' conduct "rose to the level" of "self-created hardship." However, the Board found the hardship was self-created because the Appellants consciously continued to build after being warned of an error in their side setback measurements and they knowingly exceeded the front setback variance.
If the hardship was, in fact, self-created, the Board's finding that Appellants are not entitled to dimensional relief is not clearly erroneous. See Slawson v. Zoning Board of Review of the Town ofBarrington, 102 R.I. 552, 232 A.2d 362 (1967); see also Rozes v.Smith, 120 R.I. 515, 388 A.2d 816 (1978). The language of § 45-24-41(c)[8] instructs zoning boards and reviewing courts that the grant of a requested zoning variance should be denied when, among other reasons, the alleged hardship results from "any prior action of the applicant."[9] Sciacca, 769 A.2d at 584 (holding the plaintiff's "prior action," that caused her single-conforming *Page 13 
lot to become two substandard-sized parcels, resulted in the self-created hardship that she later used as the basis for her variance request)[10] (citing 7 Patrick J. Rohan, Zoning and Land UseControls § 43.02[6] (1998) ("The label [of self-created hardship] seems to be most properly employed where one acts in violation of an ordinance and then applies for a variance to relieve the illegality.")).
In one case, a court affirmed a zoning board's denial of a variance, from the ordinance eight-foot side setback requirement, for construction of a screened pool enclosure. Town of Ponce Inlet v. Rancourt,627 So.2d 586 (Fla.Dist.Ct.App. 1993). The court upheld the zoning board determination that the landowners' alleged hardship of economic disadvantage was self-created because the landowners unilaterally violated the ordinance by constructing the pool enclosure without first obtaining a variance. Id. Similarly, in a case involving an illegal subdivision of property, our Supreme Court stated that the zoning board and the Superior Court cannot ignore the "prior actions" of the applicant in determining whether hardship was self-created.Sciacca, 769 A.2d at 584 ("By ignoring these circumstances and refusing to consider [the plaintiff's] `prior action,' [ ] the zoning board and the Superior Court misapplied state law, respectively, in granting and, then, in upholding the requested variance."). Again, in theSlawson case, our Supreme Court found that an applicant, who subdivided a conforming lot and later applied for dimensional relief for the substandard lots, was not entitled to relief from the zoning ordinance because the hardship was the result of a "deliberate disregard" of the terms of the ordinance. 102 R.I. 552, 556, 232 A.2d 362, 364.
In the instant case, the record contains evidence from which the Board could have found a "deliberate disregard" for the Ordinance by exceeding the dimensional variances previously *Page 14 
granted. See id.; 3 Arden H. Rathkopf, The Law of Zoning andPlanning, § 58:22 (2008) ("A purchaser of property acquires no greater right to a variance than his predecessor."). Specifically, the Board's determination of self-created hardship was based on various findings. First, the Board found that Appellants were notified prior to completion of the house that there was an issue with setbacks. The record indicates that Appellants began construction in January, 2007; they were notified on March 5, 2007 that there was a problem with setback measurements; and they continued construction nearly until the time of the hearing on November 14, 2007. (Tr. 11/14/07 at 26-27, 79.) The Board also heard testimony that as of March 5, 2007, there were "forms . . . [but] [t]here was no concrete,"[11] the house was not yet bricked, and there were no front stairs. (Tr. 11/14/07 at 26-27.) Additionally, the Board had evidence before it that Appellants continued to build the house after the lot had been surveyed and the house is currently near completion. (Tr. 11/14/07 at 28, 81.)
Furthermore, the Board heard testimony from Appellant, Mr. Correia, admitting he continued to work after being advised there was an issue with setbacks. During the hearing, Board member, Mr. McCoy asked, "[d]id you do any more work on the house after you had the land surveyed," to which Mr. Correia responded, "Yes, I did." (Tr. 11/14/07 at 81.) The Board also concluded the house is currently complete or nearly complete, but Appellants insist that a Board member contradicted himself on the issue of completeness. However, the record does not reflect any contradiction as to completeness, and at the hearing, Appellants confirmed the house is currently 90 to 95 percent finished. (Tr. 11/14/07 at 15.) From this evidence in the record, the Board determined that Appellants disregarded the warning of a potential problem and thus, disregarded the zoning regulations. See Murphy, 959 A.2d 535 (R.I. 2008) (citing OK Properties *Page 15 v. Zoning Board of Review of the City of Warwick, 601 A.2d 953, 955
(R.I. 1992)) (recognizing that on appeal, the court "does not weigh the evidence; instead [it] review[s] the record to determine whether substantial evidence existed to support the [ ] decision.").
Finally, the Board also found the evidence before it was contrary to Appellants' claim that they did not knowingly or intentionally violate any zoning regulations. Specifically, the Board determined Appellants made a calculated decision to construct an overhang that encroached into the front yard. The Board also noted that the front two stakes were correct, yet Appellants ignored the front setback requirement. (Tr. 11/14/07 at 8.) The Board therefore determined the hardship was self inflicted because Appellants admittedly measured less than ten feet to the front of the house, in excess of the fifteen foot front setback variance already granted. See id.; see, e.g., Ad + Soil, Inc. v. CountyCom'rs of Queen Anne's County, 307 Md. 307, 340, 513 A.2d 893, 910 (Md. 1986) (affirming a board's denial of variances where a lot was large enough to comply fully with all the setback requirements, concluding that the landowner's "hardship" was self-inflicted and was not the result of exceptional or extraordinary characteristics of the land itself and therefore not the kind of hardship cognizable under the zoning ordinance); see also Restivo v. Lynch, 707 A.2d 663, 665-66 (R.I. 1998) (quoting Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986) ("noting that trial justice `lacks authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute his or her findings of fact for those made at the administrative level'").
The Board had ample evidence before it to conclude that Appellants failed to show the hardship was not self-created. See Slawson v. ZoningBd. of Review of Town of Barrington, 102 R.I. 552, 556, 232 A.2d 362,364 (ruling the zoning board's power to grant variances is not intended as a method of sanctioning nonconforming conditions if such conditions were brought *Page 16 
about by the landowner). Accordingly, this Court finds the Board's finding that the Appellants' hardship was self-created was not clearly erroneous in view of the reliable, probative, and substantial evidence of record.
 B Good Faith
Next, Appellants argue that they did not knowingly or intentionally violate any zoning regulations, thus, causing a self-created hardship.[12] The Board found that Appellants intentionally exceeded the variances previously granted.
Generally, variances will not be granted when a zoning board determines that the hardship was created by an affirmative act by the owner. See Sciacca, 769 A.2d at 583-84; see also Rozes v. Smith,120 R.I. 515, 521, 388 A.2d 816, 820 (R.I. 1978) (determining a variance may not be granted to the owner of a substandard lot where such lot was created by the deliberate conduct of the applicant). However, "[e]vidence of good faith on the part of the landowner has been sufficient to eliminate self-creation of the hardship as a bar to the requested variance." 3 Arden H. Rathkopf, The Law of Zoning andPlanning, § 58:21 (2008). Nevertheless, "[e]vidence of good faith will not always eliminate self-creation of the hardship as a bar to a requested variance." Id.
Appellants rely on DeFelice v. Zoning Bd. of Review of Town of NorthProvidence in support of their "good faith" claim. 96 R.I. 99,189 A.2d 685 (R.I. 1963). In DeFelice, the zoning board granted landowners a variance where an addition to their house violated a setback provision of the ordinance. Id. at 103. The board found that the landowners "had acted in good faith," and that the "encroachment resulted from error and mistake of fact as to the proper *Page 17 
location of the property line." Id. On appeal, our Supreme Court affirmed the zoning board's decision to grant the variance; however, the court explained, "[i]f their action in so placing the addition to the building was with full knowledge of what they were doing we would have an entirely different picture." Id. at 104. The court stated:
 We are of the opinion that the board considered that the applicants were not conscious of any mistake, otherwise it would not have unanimously granted them a variance. It was granted because the board believed that the mistake made in locating the addition was not a conscious mistake but one which in the circumstances was understandable. Id.
Appellants aver that they relied on prior representations allegedly made by their predecessor in title and the previous granting of dimensional relief. The Board, on the other hand, found that although the reliance on the placement of the stakes may not have indicated any "initial bad faith," the Appellants' plans did not consider the "basic math of the situation."[13] (Emphasis in original.) Appellants further allege that the foundation subcontractor, using the previous stakes as lot corners, squared the lot off and "counted inward 9 feet from the side yards in accordance with what he believed, in good faith, to be the correct permitted side yard in light of the previously granted variance." (Tr. 11/14/07 at 10.) However, the Board maintains Appellants cannot reconcile their claim they acted in "good faith" with respect to the placement of the front stakes; Appellants incorrectly measured the front setback, and the front stakes were correct from the very beginning. The Board argues that Appellants' reliance uponDeFelice is misplaced since Appellants "did not simply used [sic] misplaced survey stakes but they also drew faulty plans that would have exceeded the variances even with correctly placed stakes." *Page 18 
Unlike the case of DeFelice, the Board heard testimony revealing Appellants were aware of a mistake with the setback measurements in March 2007, but Appellants continued to build, consciously disregarding the Ordinance regulations. See Inhabitants of Town of Boothbay Harbor v.Russell, 410 A.2d 554, 556 (Me. 1980) (upholding the zoning board's affirmance of building inspector's denial of a permit where a landowner built a "picnic deck" in violation of the shoreland zoning ordinance despite the refusal of a building permit). Additionally, Appellants did not apply for a variance until October 2007, after the house was nearly complete, from which the Board could have found an intentional violation of the previous variances and the Ordinance. See Town of Union v.Strong, 681 A.2d 14, 19 (Me. 1996) (finding equitable estoppel inapplicable to prevent a town from enforcing its zoning ordinance with regard to a landowner who, despite repeated warnings, constructed a two car garage without obtaining a permit for it and was "bent" on completing his deck regardless of whether the planning board approved its construction). The Board also heard Appellants' own testimony admitting that the front stakes were correct and they willfully ignored the 10-foot requirement. (Tr. 11/14/07 at 16-18.)
The Board determined there was a lack of good faith, and this Court cannot substitute its judgment for that of the Board on findings of fact. See Monroe v. Town of East Greenwich, 733 A.2d at 705;see also 3 Arden H. Rathkopf, The Law of Zoning and Planning, § 58:21 (2008) ("[In regard to a good faith analysis,] the board should be confined to considering knowledge of restrictions along with all other factors of the particular case."). Also, absent a clear abuse of discretion by the Board, this Court lacks the authority to question the Board's credibility determination in regards to the weight attributed to witness testimony. See Restivo v. Lynch, 707 A.2d at 665-66 (quotingLett v. Caromile, 510 A.2d at 960 ("noting that trial justice `lacks *Page 19 
authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute his or her findings of fact for those made at the administrative level'")). For these reasons, this Court finds the Board's finding that Appellants' lacked good faith was not clearly erroneous or arbitrary and capricious.
 C Financial Gain
Appellants also urge the Court to find that the Board misapplied the law in evaluating Appellants' application with regard to an applicant seeking financial gain. The Board, on the other hand, determined that the Appellants were seeking greater financial gain via grant of dimensional relief.
General Laws § 45-24-41(c) and Ordinance § 9-8 provide that an applicant must show that his or her alleged "hardship is not the result of any prior action of the applicant and does not resultprimarily from the desire of the applicant to realize greater financial gain." (Emphasis added.) Giving the word "and" its plain and ordinary meaning, the hardship alleged cannot be the result of any prior actionand cannot result primarily from a desire to realize greater financial gain. See Mauricio v. Zoning Board of Review, 590 A.2d at 880 ("[W]hen the language of a statute is unambiguous and expresses a clear and sensible meaning . . . [t]he statute must be applied literally by giving the words their plain and ordinary meaning.").
Giving the word "primarily" its plain and ordinary meaning, [14] the hardship alleged cannot result "for the most part" from a desire to realize a greater financial gain. Appellants insist, however, that the standard does not prohibit an applicant from "realizing any financialgain." (Emphasis in original.) In contrast, the Board argues that the "For Sale" sign on the Property was indicative of a primary desire to realize greater financial gain. See Gaglione v. *Page 20 DiMuro, 478 A.2d 573, 576 (R.I. 1984) (quoting Rhode Island HospitalTrust National Bank v. East Providence Zoning Board of Review,444 A.2d 862, 864 (1982)) ("[A] mere showing of a more profitable use that would result in a financial hardship [to the owner] if denied does not satisfy the requirements of our law."). The Board also states that it not only based its decision on the "For Sale" sign, but more importantly, on the fact that Appellants continued construction after realizing there was a problem and that additional relief would be needed. Gaglione,478 A.2d at 577 (citing Goodman v. Zoning Board of Review of Cranston,105 R.I. 680, 686, 254 A.2d 743, 747 (1969)) (recognizing that when a zoning board considers an application for a variance, it may not equate economic unfeasibility in the real estate market with undue hardship).
It is well-settled that the fact that a "use may be more profitable or that a structure may be more valuable after the relief is granted is not grounds for relief." Lischio, 818 A.2d at 691. However, Ordinance § 9-8 does not expressly exclude the possibility of any financial gain if the variance were granted. (Emphasis added.) See V.S.H. Realty, Inc. v.Zoning Bd. of Review of City of Warwick, 103 R.I. 16, 20, 234 A.2d 355,357 (1967) (citation omitted). Rather Ordinance § 9-8 requires the Board to determine whether the alleged hardship itself primarily results from a desire for financial gain or a self-created need.
The Board found the Appellants built the house in excess of the previously granted variances. See 3 Arden H. Rathkopf, The Law of Zoningand Planning, § 58:23 (2008) ("Once the variance is granted the landowner cannot fail to exercise that granted variance and later raise the same claim of hardship on a subsequent application for a different variance affecting the same property.") In the present case, the subject matter was not so arcane that the Board members could not have used their own experiences and expertise to draw inferences from the Appellants' testimony. See Restivo v. Lynch, 707 A.2d at 671 (finding where the subject matter *Page 21 
is not arcane, inferences can be drawn from factual lay testimony by board members based partly on their own experience and expertise). Therefore, from the evidence of the record, the Board could have inferred that financial gain was the Appellants' primary motivation for violating the previously granted variances and only seeking relief after the house was complete. See City of Miami Beach v. Burns, 179 So.2d 380
(Fla.Dist.Ct.App. 1965) (determining that the hardship which was alleged in application for a variance that was granted could not properly be used as hardship in subsequent application for variance on the same property).
Accordingly, increased financial gain is not a hardship which merits zoning relief. See Gaglione, 478 A.2d at 577 (citing Goodman,105 R.I. at 686, 254 A.2d at 747) (noting that when a zoning board considers an application for a variance, it may not equate economic unfeasibility in the real estate market with undue hardship). Consequently, the Board is not clearly erroneous in finding that increased financial gain was a primary motivation for the requested zoning relief.
 D Mere Inconvenience
Appellants argue that a denial of their application subjects them to a hardship amounting to more than a mere inconvenience. Appellants claim they "qualify under [this] standard" due to their "good faith mistake as to the boundary lines has resulted in the erection of a residence for which a Certificate of Occupancy cannot be obtained." The Board claims that Appellants, after having fully constructed the house on the Property, sought to increase the dimensional relief that had been granted to a previous owner.
Section 45-24-41(d)(2) requires the applicant to demonstrate only "that the hardship [the applicant would suffer] if the dimensional variance is not granted amounts to more than a mere inconvenience."See Sciacca, 769 A.2d at 582 (clarifying the standard for an applicant to obtain a dimensional variance and establishing that the landowner needs to show only an adverse impact *Page 22 
that amounted to more than a mere inconvenience).[15] However, inRozes v. Smith, our Supreme Court declared: "A variance is not properly granted to insure personal convenience or a more profitable use of the property." 120 R.I. 515, 521, 388 A.2d 816, 820 (1978).
Appellants insist their inconvenience is the inability to obtain a Certificate of Occupancy. However, Appellants did not present any evidence to the Board that a smaller home would be dangerous to occupy or, at the least, an unreasonably uncomfortable home. See id.;see contra Gardiner v. Zoning Bd. of Review of the City of Warwick,101 R.I. 681, 226 A.2d 698 (1967) (affirming the grant of a variance to construct a 2 1/2 room home measuring 24 by 28 feet, noting only that "as a practical matter it is not possible for [petitioner] to comply with the side line and side street requirements on the lot in question."). Nor did Appellants present evidence to the Board that a home that conformed to the setback requirements, minimized by previously granted variances, would be unmarketable.[16] See 3 Arden H. Rathkopf,The Law of Zoning and Planning, § 58:12 (2008) ("[T]he extent of the nonuse variance sought and whether a lesser variance would be more in keeping with the character of the neighborhood has also been held to be a factor for consideration by the board."); see also Marks v. Zoning Bd.of Review of City of Providence, 98 R.I. 405, 406, 203 A.2d 761, 763
(R.I. 1964) (explaining a zoning board's qualified power to reverse an earlier determination is not to be exercised unless there has been a substantial or material change in circumstances intervening between the two decisions); see contra Westminster Corp. v. Zoning Bd. of Review ofthe City of Providence, 103 R.I. 381, 388, 238 A.2d 353, 358 (R.I. 1968) (affirming a grant of a variance where it was necessary for "any assurance of financial success," and for an "economically sound building project"). *Page 23 
Therefore, the record reflects that Appellants' desire to build a larger house, which exceeded previously issued variances, and not the denial of an additional variance, is what caused their alleged "mere inconvenience." See DiDonato v. Zoning Bd. of Review of Town ofJohnston, 104 R.I. 158, 164, 242 A.2d 416, 420 (R.I. 1968) (finding a petitioner failed to meet the "mere inconvenience" standard by showing he would suffer a personal inconvenience in conforming to the lot line restrictions imposed by the ordinance, and defining the words "more than mere inconvenience" to mean that "an applicant must show that the relief he is seeking is reasonably necessary for the full enjoyment of his permitted use").
Having failed to satisfy all four statutory requirements for a dimensional variance, the Appellants have not met their burden of demonstrating more than a mere inconvenience. Accordingly, this Court finds that the Board's decision was not clearly erroneous in view of the reliable, probative, and substantial evidence of record in determining that Appellants had not met their burden of proof with regard to the "mere inconvenience" provision.
 VI Conclusion
For all of the foregoing reasons, this Court affirms the Board's decision to deny Appellants' dimensional relief. This Court finds that the Board did not act in excess of its statutory authority or in violation of Ordinance provision. Furthermore, this Court is satisfied that the Board's decision to deny the dimensional variances was supported by substantial evidence and is therefore not clearly erroneous, arbitrary and capricious, nor an abuse of discretion. Substantial rights of the Appellants have not been prejudiced. Accordingly, this Court affirms the Board's decision.
Counsel shall submit an appropriate order for entry in accordance with this Decision.
[1] Mr. Correia measured 50 feet towards the back of the lot, so that the property line was 9 feet from the front of the house. (Tr.11/14/07 at 29-30.)
[2] Mr. Madden testified that the house was formed, but not cemented as of March 5, 2007. (Tr.11/14/07 at 26-27.) Mr. Correia testified that the house had been cemented. (Tr. 11/14/07 at 26.)
[3] It is unclear from the record the exact date the survey was performed.
[4] All references to "back," "front," "left," and "right" assume that one is facing the house from Vermont Avenue.
[5] The front right corner was 9.27 feet from the right side boundary, so it met the previous 15 foot variance granted.
[6] The court in Von Bernuth reversed the grant of a dimensional variance because there was no evidence in the record that a hardship existed or that the applicants had no reasonable alternative, thus, not meeting the criteria set forth in § 45-24-41. 770 A.2d at 401.
[7] This Court recognizes that Appellants claim the relief requested was the "least relief necessary" because they have an existing structure they contend was constructed "in good faith reliance upon the circumstances and prior representations." However, the Board argues that the "least relief necessary," with respect to the Property, was previously granted in February, 2006 as variances that were exceeded by Appellants. This Court finds that Appellants have failed to properly brief this issue for this Court's review. See Fisher 947 A.2d at 252;see also Wilkinson, 788 A.2d at 1131 n. 1. Therefore, this Court cannot find the Board's finding clearly erroneous in view of the reliable, probative, and substantial evidence in the record.
[8] The hardship may not be "the result of any prior action of the applicant." See Section 45-24-41(c)(2).
[9] "An ancient legal maxim speaks to this type of conduct: `Nullus commodum capere potest de injuria sua propia.' (`No person should profit by his or her own wrongdoing.')." Sciacca v. Caruso,769 A.2d 578, 585 n. 8 (R.I. 2001).
[10] In Sciacca, the court held that the plaintiff sought relief from dimensional zoning requirements that became applicable to her substandard lot only because of her earlier illegal subdivision of the property before the planning board. Sciacca, 769 A.2d at 584.
[11] Mr. Madden testified that the structure had "forms" as of March 5, 2007, which this Court acknowledges Mr. Madden was referring to the structure having been framed. (Tr. 11/14/07 at 26.)
[12] Appellants rely on DeFelice v. Zoning Bd. of Review of the Townof North Providence, 96 R.I. 99, 103, 189 A.2d 685, 687 (1963), affirming the zoning board's conclusion that a 4 ½ foot illegal encroachment resulted from error and mistake of fact as to the proper location of the property line and that to deny dimensional relief would result in an unnecessary hardship.
[13] The Board relies upon the fact that in order to construct a structure 32 feet wide in the front and back and maintain 9-foot side yards, the side lot lines needed to be parallel at a distance of 50 feet. However, the side lot lines were not parallel, as clearly shown on the submitted plans and undisputed by the parties.
[14] The word "primarily" means "for the most part: chiefly; in the first place: originally." Merriam-Webster's Online Dictionary,http://www.merriam-webster.com/dictionary/primarily, (last visited November 24, 2008).
[15] This Court recognizes that the revised language in the 2002 amendment of § 45-24-42(d)(2) lessens the burden of proof necessary to obtain dimensional relief and an applicant need show only that the effect of denying dimensional relief amounts to more than a mere inconvenience. See § 45-24-42(d)(2); see also Lischio,818 A.2d at 692.
[16] Appellants contend that they cannot sell the property until they obtain a Certificate of Occupancy.